# Baltimore & Ohio R. R. Co., Appellant, *v.* Public Service Commission.

*Carriers—Railroads—Rates—Burden of proof—Public Service Commission—Appeals.*

Where a railroad company has filed a new tariff of freight rates, and no complaint is made within thirty days against such tariff, the proposed rates become effective rates; and if any shipper thereafter complains to the Public Service Commission that such rates are unreasonable, the burden of proof is upon him to establish that fact. In such a case the carrier is not required to produce any evidence until the complainant has, prima facie at least, offered proof which if unanswered would warrant an order in his favor.

Where the public service commission has found in a proceeding on a complaint against effective rates "that the rates complained of, are an increase of practically one hundred per cent," and such finding is not sustained by an inspection and comparison of the old tariff with the new tariff, and on appeal from the order of the Public Service Commission lowering the rates, the record does not present such facts found by the commission upon the evidence that will enable the court to determine whether or not the conclusion

reached by the commission is a reasonable one, and in conformity with law, the order of the commission will be reversed, and the record remitted to the commission with directions to reconsider the order, and make such further report as will be warranted by the law and the evidence.

Argued Oct. 19, 1916. Appeal, No. 138, Oct. T., 1916, by plaintiff, from order of Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket 384, in case of Baltimore & Ohio Railroad Company v. Public Service Commission of the Commonwealth of Pennsylvania and R. W. Wilson, Intervenor. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Complaint by R. W. Wilson against milk rates. ·

The opinion of the Superior Court states the case.

The commission in an opinion by RILLING, Commissioner, reported the following conclusions from which an appropriate order was made:

I. That the milk and cream rates of all of the respondents complained of for carrying intrastate milk and cream to Pittsburgh and its suburban towns are excessive and unreasonable.

II. That the rates for carrying milk should be approximately 75 per cent. of the rate for carrying cream, and the rate for carrying a five-gallon can should be approximately 7-10 of the rate for carrying a ten-gallon can; and rate for carrying an eight-gallon can should be approximately 9-10 of the rate for carrying a ten-gallon can.

III. That it is proper to establish a zone system, in order that proper rates may be fixed for transporting intrastate milk and cream into Pittsburgh and its suburban towns.

IV. That the fair, just and reasonable rates for transporting intrastate milk and cream into the City of Pittsburgh, Pa., and its suburban towns, are hereby fixed as

per the following schedule, which is to take effect as of May 1, 1916, and an order will be issued accordingly.

### Rate in Cents per Can.

| Zones. | | | MILK. | | | CREAM. | | |
|---|---|---|---|---|---|---|---|---|
| | | | Size of Can in Gals. | | | Size of Can in Gals. | | |
| Miles. | | | 5 | 8 | 10 | 5 | 8 | 10 |
| | | | Cents | Cents | Cents | Cents | Cents | Cents |
| 1 to | 25 | inc., .. | 10 | 13 | 15 | 14 | 18 | 20 |
| Over 25 to | 30 | inc., .. | 10 | 13 · | 15 | 15 | 19 | 21 |
| Over 30 to | 35 | inc., .. | 11 | 14 | 16 | 15 | 20 | 22 |
| Over 35 to | 40 | inc., .. | 11 | 15 | 17 | 16 | 21 | 23 |
| Over 40 to | 45 | inc., .. | 12 | 16 | 18 | 17 | 22 | 24 |
| Over 45 to | 50 | inc., .. | 12 | 16 | 18 | 17 | 22 | 25 |
| Over 50 to | 60 | inc., .. | 13 | 17 | 19 | · 18 | 23 | 26 |
| Over 60 to | 70 | inc., .. | 14 | 18 | 20 | 19 | 24 | 27 |
| Over 70 to | 80 | inc., .. | 14 | 18 | 21 | 20 | 25 | 28 |
| Over 80 to | 90 | inc., .. | 14 | 18 | 21 | 20 | 26 | 29 |
| Over 90 to | 100 | inc., .. | 15 | 19 | 22 | 21 | 27 | 30 |

*Error assigned* was the order of the commission.

*W. B. Linn,* with him *H. B. Gill, C. R. Weber* and *E. T. Noble,* for appellant.—The burden of proving that the rate was unreasonable was on Wilson: People ex rel. New York City v. Public Service Commission, 215 N. Y. 241.

There is no evidence sustaining the findings of fact made by the commission: Coke Producers Assn. v. B. & O. R. R. Co., 27 I. C. C. 125; Traffic Bureau of Nashville v. Louisville, Etc., R. R. Co., 28 I. C. C. 535.

· *George E. Alter,* of *McKee, Mitchell & Alter,* for appellee.—A railroad company by putting in force and continuing in force a rate of charges furnishes evidence that the rate is profitable and if it increases a long established rate the new rate will be presumed to be unreasonably high: Cox Bros. & Co. v. Lehigh Valley R. R. Co., 4 I. C. C. 535; National Hay Assn. v. L. S. & M. S. R. R. Co.,

9 I. C. C. 264; Central Yellow Pine Assn. v. Ill. Cent. R.
R. Co., 10 I. C. C. 505; Advances in Rates in Official
Classification Territory, 20 I. C. C. 243; Advances in
Rates in Western Trunk Line, Etc., Territories, 20 I. C.
C. 307.

OPINION BY HEAD, J., April 16, 1917:

Before entering upon a discussion of the exact, ques-
tions presented for our consideration by this appeal, it
may not be amiss to describe briefly the situation exhib-
ited by the record.

In the spring of 1915 several railroad companies oper-
ating lines in Western Pennsylvania filed with The Pub-
lic Service Commission schedules of proposed changes in
their rates affecting the transportation of milk. Among
these was the Baltimore & Ohio Railroad Company, the
present appellant, and it is the appeal of that company
alone we have before us. No complaint having been
made from any source against the tariff filed by this ap-
pellant within the statutory period of thirty days, its
proposed rates became effective rates. The law so pro-
vides.

Of course, even after the rates filed by this appellant
became effective it was still competent for any one af-
fected by them to complain to the Public Service Com-
mission that the rates in force were unreasonable. But
in such case the law casts upon the complainant the bur-
den of proving that the effective rates attacked are un-
reasonable. This provision of the law is not a mere mat-
ter of form but carries with it a substantial right to the
public service company whose legally effective rates are
challenged. In other words, under such circumstances,
the public service company is placed by the law in the
position of a defendant in an ordinary action at law. He
is not required to produce any evidence until the plain-
tiff has, prima facie at least, offered proof which, if un-
answered, would warrant a judgment in his favor. We

are not to be understood as saying that in such a case the complainant is debarred from the benefit of evidence that may exist only in the records of the carrier. In civil proceedings such evidence is always available to the adverse party under well established rules and the Act of 1913, Article VI, Section 1, makes ample provision for such cases.

As to the railroad companies, other than this appellant, whose proposed rates were complained of before they became effective, the burden of proof to establish the reasonableness of the prospective change of rates is placed on the carrier, thus putting it in the attitude of a plaintiff who must make out his case. The Public Service Commission, doubtless in an effort to save time, heard together all of the complaints including that against the effective rates theretofore lawfully established by this appellant. We cannot say, as matter of law, this of itself took away any substantial right of this appellant because, legally speaking, what is called "the burden of proof" is one thing; the order of the production of evidence is another. Cross actions have often been successfully tried together and verdicts and judgments rendered just to both of the parties interested. But that some confusion at least, if not some real difficulty, arose in this instance will become apparent upon a more critical examination of the record as it affects this appellant. To this we now turn our attention.

On April 24, 1915, R. W. Wilson, intervenor in this appeal, filed with the Public Service Commission his petition. Its material averments were these, to wit: (a) That he resided in Washington County, Pennsylvania, and was a shipper of milk on the railroad system of respondent; (b) that in 1911 respondent had established certain rates for the transportation of milk on its Pittsburgh division between Pittsburgh and Wheeling; (c) that on or about March 15, 1915, respondent filed new tariff schedules which, since April 15, 1915, had gone

into effect; (d) that the new tariff of charges "on its said Pittsburgh division", were excessive, unreasonable, etc.; (e) that the petition was filed in his own behalf "as a shipper on the said Pittsburgh division of the railroad system of respondent and in behalf of all other shippers on said division of said system affected by said tariff, etc."; (f) that respondent be required to answer the charges herein made, etc.   The answer of the appellant was fully responsive to the petition on every material averment.   Thus was made up the issue which called into active exercise the conceded powers of the Public Service Commission.   In the report of the commission disposing of this issue, with the many others considered at the same time, there appear twenty-seven findings of fact.   Excluding for the moment from our consideration two schedules or tables of rates to which we shall refer, they are all of a general character without any indication of the fact or facts established by the evidence on which it could or should be judicially determined the existing effective rates of the appellant carrier should be set aside and "reasonable rates" substituted.   The report declares "that the rates complained of are an increase of practically 100 per cent. above the present rates on milk."   Upon what evidence, applicable to this appellant, could such a conclusion rest?

The report incorporates two schedules of rates pertaining to this appellant.   The first exhibits the rates or tariffs in effect before April 15, 1915; the second those that became effective after that date, and these were the rates charged in the complaint as being unreasonable.   As the commission also finds that 90 per cent. of the intrastate milk carried into Pittsburgh is produced within a radius of thirty-five miles of said city and is generally shipped in five-gallon cans, we print only the portions of the schedules necessary to show the actual increase of rates established by this appellant in the zone of activity referred to.

Rates of the Baltimore and Ohio Railroad Company, Pittsburgh Division, in effect before April 15, 1915:

| Zones. | 5 gallons. | 10 gallons. |
|---|---|---|
| 1 to 25 miles, .............. | 10c | 20c |
| Over 25 to 30 miles, .............. | 10c | 20c |
| Over 30 to 35 miles, .............. | 10c | 20c |

Rates complained of for the Baltimore and Ohio Railroad Company, in effect after April 15, 1915:

In cents per can.

| Zones. | Milk. | | |
|---|---|---|---|
| | Size of can in gals. | | |
| Miles. | 5 | 8 | 10 |
| | Cents. | Cents. | Cents. |
| 1 to 25 inc., ..... | 11 | 17 | 20 |
| Over 25 to 30 inc., ..... | 11 | 18 | 21 |
| Over 30 to 35 inc., ..... | 12 | 19 | 22 |

What do they conclusively show? As to five-gallon cans the increase within a thirty-mile zone was from ten to eleven cents per can, or ten per cent. Pushing back the zone boundary to thirty-five miles, the increase was two cents per can, or twenty per cent. As to ten-gallon cans, up to twenty-five miles there was no increase. From twenty-five to thirty miles, one cent per can, or a five per cent. increase. From thirty to thirty-five miles, an increase of two cents, or ten per cent. These figures, adopted by the commission in its report, do not furnish any warrant for the finding as against this appellant "that the rates complained of are an increase of practically 100 per cent."

Did the complainant produce evidence that would support the conclusion the increase in rates shown by the schedules just considered resulted in "an unreasonable rate"? The decisions of our Supreme Court, by which the Public Service Commission, as well as this court, must be bound, have marked some boundary lines beyond which we cannot go in answering the question now under consideration. In Brymer v. Butler Water Co., 179 Pa. at page 231, we read: "Fixed charges and

the costs of maintenance and operation must first be provided for, then the interests of the owners of the property are to be considered. They are entitled to a rate of return, if their property will earn it, not less than the legal rate of interest; and a system of charges that yields no more income than is fairly required to maintain the plant, pay fixed charges and operating expenses, provide a suitable sinking fund for the payment of debts, and pay a fair profit to the owners of the property, cannot be said to be unreasonable." This language is quoted with approval, if indeed it is not emphasized, in the opinion of Mr. Chief Justice MITCHELL in Penna. Railroad Co. v. Philadelphia County, 220 Pa. 100. There was, as the report of the commission shows, considerable evidence offered, both by complainants and respondents, in the line of expert testimony on rate making. What impression did this testimony make on the minds of the tribunal who were to determine the important questions involved? The report itself answers: "If the service of the railroad companies was isolated and we were furnished with the value of the entire investment required and used solely to carry this traffic, together with the cost of operation and the gross and net receipts for a definite period, we might base our conclusion on a more concrete basis. But such is not the case. We are without definite data as to the cost to the railroad companies for carrying milk and cream. The railroad companies did furnish the commission with certain evidence of values of terminals and other property and also furnished evidence of the increase of the traffic, as well as the general increase of cost of carrying the same, and in a general way the facilities required for the increased service and investment needed to meet the demands made on the railroad companies. Yet no sufficient facts or bases were supplied on which we might reach a definite conclusion or fix the rates on a cost of service basis." On what basis then are they to be fixed? How meet the requirements of the decisions above referred to unless

those upon whom the burden of proof rested furnish to the commission such evidence as will fairly enable them to determine that the rate complained of yields a revenue above and beyond the cost of service including the several items referred to in the cases?

But another question arises, not free from difficulty. The Public Service Commission, under the act creating it, is empowered not only to hear and determine complaints as to rates, etc., made by shippers or others interested, but "the commission may also, upon its own motion, and upon such notice as it may deem reasonable under the circumstances, institute any similar inquiry or investigation and fix a time and place for a hearing, etc." Did the Public Service Commission determine to conduct an investigation into the broad question of ascertaining what would be reasonable rates for the intrastate transportation of milk? Did it give proper notice to those who would be affected by the results of such an investigation? Was it the object of the proceeding to determine whether the complainant and those associated with him, shippers of milk on the Pittsburgh division of the appellant railroad company, had shown just cause for action by the commission concerning the rates complained of? The record does not clearly answer. The hearing appears to have been conducted by counsel for the complainant. The lengthy printed discussion between the acting commissioner and counsel for complainant and the several carriers apparently had for its object the discovery of an order of procedure that would get on the record, in the quickest and most convenient way, the testimony called for in the subpoena served on the officials of the several carriers. With the record as it now is before us, it would be difficult to answer the assignment of error alleging that the order by the commission goes far beyond the relief prayed for in the petition which apparently was the foundation of the proceeding.

The order of the commission complained of fixed

rates for milk carried into Pittsburgh up to the distance of one hundred miles. Whether or not that distance westward towards the Ohio state line would reach or cross that line, we do not know. What rates have been established by the Interstate Commerce Commission for the transportation of milk from Ohio into Western Pennsylvania, we are not advised. Whether or not the rates established by the Public Service Commission would or would not bring about a discrimination in favor of the Pennsylvania shipper as against the one living in Ohio, we cannot now say because of the absence from the record of the necessary facts.

The functions of this court upon appeals from orders of The Public Service Commission have been plainly stated in Borough of Mount Union v. Mount Union Water Co., 63 Pa. Superior Ct. 337, and in West Virginia Pulp Co. v. The Public Service Commission, not yet reported. We have declared in those decisions that the statute exhibited no legislative intent to convert the Superior Court of Pennsylvania into a second administrative tribunal or to place upon the shoulders of the judges of that court the duty of examining and weighing all of the evidence and determining for itself what would be a reasonable rate for the transportation of any commodity.

Establishing a schedule of the rates or tolls that a public service company may lawfully demand is one of the most complicated and important of all of the many important tasks imposed by the legislature on the Public Service Commission. The proper determination of such questions necessarily involves the consideration of many matters and things far removed from the atmosphere of an appellate court of law. After a patient and careful examination of the record in this case, recognizing as we do that the controlling question was peculiarly within the jurisdiction of the Public Service Commission, we have determined to send back this record with a direction for a further consideration of the

question by the commission.  We deem it our right that the record should present facts found by the commission from the evidence that will clearly enable us to determine in the discharge of our duties whether or not the conclusion reached by the commission is a reasonable one and in conformity with law.  We have indicated in this opinion what we regard as important and material facts not brought before us by this record.  If the evidence will warrant the Public Service Commission in finding the facts which will support the order it has made, then the difficulties under which we labor have been merely matters of procedure and can be corrected by an amended report.  If the evidence will not warrant such findings, then it would appear to be the duty of the Public Service Commission to dismiss the complaint for lack of such proof as would warrant its interference with the legally established and effective rates complained of.

The order of the Public Service Commission, in so far as it affects this appellant, is reversed and set aside and the record is remitted to the commission with direction to reconsider the order as it relates to this appellant and make such further report as will be warranted by the law and the evidence, the costs of this appeal to be paid by the intervenor.  ·