## Greensburg et al., Appellants; *v.* Public Service Commission.

*Public Service Company Law—Public service companies—Water companies—Rates—Valuations.*

Establishing a schedule of rates or tolls that a public service company may lawfully demand is one of the most complicated and important of all the many important tasks imposed by the legislature upon the Public Service Commission.  The proper determination of such questions necessarily involves the consideration of many

matters and things far removed from the atmosphere of an appellate court of law. It is, therefore, to be regarded as a settled principle that under such legislation, in an appeal from the order of the Public Service Commission, the inquiry of the court is not, whether the order is such as the court would have made in the exercise of administrative function, but whether the order was a reasonable exercise of the discretion conferred upon the commission by the statute.

Where, on a complaint as to the reasonableness of the rates to be charged by a water company, there is ample evidence to support the findings of the commission, and where the rates complained of are fully warranted by the testimony of expert witnesses of the complainant, the Superior Court will not disturb the finding of the commission.

Where the commission has determined a rate to be charged by a water company, an order of reparation will not be awarded to a municipality where the rate to be charged it has not been declared to be unjust and unreasonable by the commission although the rate charged individual consumers has been declared excessive. In such case the municipality is not entitled to reparation on its own rate. The mere fact that some of its inhabitants have paid a rate, in excess of that found to be just and reasonable by the commission does not give the right to the municipality to consider such excess payments as ground for refusing to pay the amounts due and owing by it to the water company. The question of reparation is not to be determined by the commission until presented to it in the manner prescribed by the Public Service Company Law and, in the absence of any petition for reparation by the individual consumers who might be entitled thereto, an order of the commission, refusing to make any order of reparation, will be affirmed.

Argued April 24, 1919. Appeal, No. 87, April T., 1919, by Borough of Greensburg, from order of the Public Service Commission of the Commonwealth of Pennsylvania, No. 262, 1914, in the case of Borough of Greensburg v. The Public Service Commission of the Commonwealth of Pennsylvania, on appeal, and the Westmoreland Water Company, Intervenor. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ. Affirmed.

Complaint before the Public Service Commission that the schedule of rates filed by the Westmoreland Water

Company were unreasonable, excessive and discriminatory.

The facts appear in the opinion of the Superior Court.

On petition for a rehearing, the Public Service Commission made an order dismissing the petition and affirming its former order for the filing of new rates, in accordance with a valuation previously determined.

*Error assigned* was the order of the commission.

*Charles Whitten,* of *Gaither & Whitten,* and with him *Adam M. Wyant, George W. Flowers, Z. T. Silvis, Crowell and Whitehead, Keister and Fink, R. D. Laird* and *H. H. Fisher,* for appellants, cited: Ben Avon Boro. et al. v. Ohio Valley Water Co., 260 Pa. 290; Baltimore & Ohio R. R. Co. v. Public Service Commission, 66 Pa. Superior Ct. 403; Ben Avon Boro. v. Ohio Valley Water Company (No. 2), 260 Pa. 310; Norman v. Heist, 5 W. & S. 171.

*Robert W. Smith,* and with him *James S. Moorhead,* for appellee.

OPINION BY PORTER, J., October 13, 1919:

The Westmoreland Water Company, on December 26, 1913, adopted a schedule of rates and regulations, which was duly posted in the various offices of the company, in accordance with the provisions of the statute, and later filed with the Public Service Commission. No complaint having been made, within the statutory period, from any source against the schedule of rates filed by the company, its proposed rates became effective rates. The Borough of Greensburg, and John V. Stephenson and Rabe F. Marsh, citizens and taxpayers thereof, and customers and users of water furnished and supplied by the Westmoreland Water Company, filed their complaint with the Public Service Commission, on August 4, 1914, alleging that said schedule of rates adopted by the West-

moreland Water Company, was unjust, unreasonable, excessive, discriminatory and unreasonably preferential in favor of consumers taking large quantities of water and that said rates demanded of the said borough for public fire service were unjust, unreasonable and excessive. The complaint prayed the commission to inquire and determine as to the reasonableness of the charges for water furnished to the said Stephenson and Marsh and to other customers, and to decree that the charges heretofore made by the respondent be decreased; that the commission inquire and determine as to the reasonableness of the charges for water furnished for public fire protection to the said borough and that all excessive, preferential and discriminatory rates be abolished. Similar complaints were subsequently filed by the municipal authorities of the Boroughs of Jeannette, Youngwood, Irwin, and Manor, the last of said complaints having been filed on December 29, 1914. The first hearing was held before the Public Service Commission on October 9, 1914, when after some little testimony had been offered in behalf of the complainants, it was agreed by counsel representing the litigants that engineers representing the complainants, respondent and the commission should meet in conference and endeavor to agree upon the value of the properties of the Westmoreland Water Company, and the Chief of the Bureau of Accounts and Statistics of the Commission was directed by the commission to make an examination of the books and records of the respondent company. The making of these investigations and the taking of testimony necessarily consumed much time and, on April 17, 1917, the Public Service Commission filed its preliminary report determining the value of the property of the water company to be $1,100,000, that $77,000 per annum was a proper allowance for a fair return upon the investment and that an allowance should be made for operating expenses, including an allowance for depreciation, in the sum of $79,520 per annum, mak-

ing the sum of $156,520 "the amount in gross revenue
per annum that is required to defray all the costs of
rendering the service and fully compensate the respond-
ent for all of its property used and useful in the service
of the public." The respondent promptly applied for a
rehearing, which the commission granted, and after a
further hearing the commission, on July 24, 1917, amend-
ed its report and determined that the value of the prop-
erty of the respondent company was $1,125,000 and that
the allowance for a fair return to the respondent should
be $78,750 per annum. The commission ordered the
water company to design a schedule of charges for the
services rendered by it that would return an annual gross
revenue of $158,270, being the amount of the estimated
operating expenses and the return to which the company
was entitled upon its investment. Within sixty days
thereafter, as required by the order of the commission,
the respondent designed and submitted a schedule of
rates. This schedule was not acceptable to the com-
plainants and was not entirely satisfactory to the com-
mission, and the official engineering bureau of the com-
mission was then directed to take up, in connection with
engineers representing the respondent and the complain-
ants, the preparation of a rate schedule for submission
to the commission. The engineers met in conference
from time to time and after a large amount of data had
been collected, designed and submitted a schedule of
rates. The commission, on July 2, 1918, after a full hear-
ing and patient investigation promulgated a schedule of
rates, and directed the said new rates to take effect on
the first day of August, 1918, whereupon the complain-
ants filed a petition for a rehearing, which the Public
Service Commission after full consideration refused, and
affirmed its order of July 2, 1918. The complainants ap-
peal from that determination.

The schedule promulgated by the commission provided
specific rates for different classes of service. The rates
fixed for the majority of small domestic consumers are

less than those which that class were required to pay under the schedule in force at the time these complaints were filed. The rates as to other domestic consumers and all large industrial consumers were increased. The rates for public fire service, to be paid by the several municipalities involved, are by the determination of the commission made higher than the municipalities were required to pay under the schedule of which they complain. We have here no complaint as to the value of the property of the Westmoreland Water Company fixed by the determination of the commission, nor as to the estimate of the expense of operation; it is conceded that the sum which the water company will, under the rates fixed by this schedule, receive for the service performed, does not exceed the amount to which it is under the law entitled. The appellants complain of the determination of the commission upon two grounds, only one of which refers to the prospective effect of the rates and is essentially a quarrel between different classes of consumers. The other is as to the action of the commission in fixing the effective date of the schedule as August 1, 1918, without making any order as to the rates which should be paid, by those who had not paid, during the pendency of the litigation, from August 4, 1914, to August 1, 1918, or any order as to reparation by the company to consumers who had paid, during the litigation, according to the schedule then in existence.

The complaint that the schedule is inherently defective and unlawful is founded upon the assertion that "some of the consumers of water are supplied at a rate below the cost thereof to the water company." The commission heard a large amount of testimony and filed a report, which clearly indicates an exhaustive examination and intelligent consideration of all the intricate questions involved. It arrived at the conclusion that, in order to equitably distribute the burden, it was proper to divide the total annual gross revenue to be earned into "Ready to Serve Costs," and "Output Costs." The "Ready to

Serve Costs" embrace "Capacity Costs," which vary
with the probable demand upon the system and are more
or less independent of the quantity of water consumed,
and "Consumers Costs" which vary directly with the
number of consumers but are independent of the quantity
of water consumed.   When the plant has been construct-
ed, the source of supply of water obtained, the pipes to
serve consumers and the meters installed, the consumer
has a right to expect the company to be ready at all times
to furnish water in such quantities as may be reasonable,
taking into consideration the character of the fixtures
which he has installed.   The company is not required
to be prepared to furnish the same amount of water
through a five-eighth-inch meter that could reasonably
be expected to be demanded by a consumer for whom
the company had installed a three-inch meter.   We can
not say that it is not in conformity with law nor that it is
unreasonable to require that the "Ready to Serve" charge
should be determined by the size of the meter through
which the company is required by the consumer to sup-
ply him with water.   The "Output Costs" are those costs
which vary more or less closely with the quantity of
water consumed, without regard to the capacity of the
meter which the consumer has installed.   The schedule
of rates adopted by the commission fixed the "Output"
charge, to be paid by all consumers without regard to the
size of the meter through which the water passed, at
eleven cents per one thousand gallons of water.   The
schedule having provided that the "Ready to Serve"
charge should vary according to the size of the meter in-
stalled, the lowest rate being $6 per annum for a five-
eighth-inch meter through which the consumer could draw
water from three fixtures or outlets and the highest rate
$192 per annum for a three-inch meter, it appears that a
consumer who has caused a large meter to be installed and
who, for any reason, during a given year used only, say,
20,000 gallons of water would have to pay a total charge
greater than if he had taken the same amount of water

through a small meter. This, however, is not the ground of complaint of the appellants, for the reason, no doubt, that the industrial consumer who had caused a large meter to be installed but might not for a time have occasion to use a large quantity of water could, under the regulations, cause a smaller meter to be substituted or have the water turned off, and thus reduce or entirely suspend the "Readiness-to-Serve" charge. The contention of the appellants, upon this branch of the case, is that the "Output" charge of eleven cents per one thousand gallons of water is, by the findings of the commission, disclosed to be less than the water actually cost the water company; they argue that the "Output" charged should be increased and all the "Readiness-to-Serve" charges made lower. We have carefully considered the report of the commission and the voluminous testimony upon which its determination was based and do not find therein any ground for holding that the contention of the appellants is well founded. The commission found, upon competent testimony, that the Westmoreland Water Company purchases about one-half of the supply which it furnishes to its consumers from the Mountain Water Supply Company, to which it pays 8 cents per thousand gallons for the water coming from that source, that it costs two and six-tenths cents per thousand gallons to pump that water into the distributing system of the company, and that the water received from that source "costs respondent approximately 10 6/10 cents delivered in its system." The appellants argue, however, that because a certain percentage of the water is lost in distribution that the company actually pays more than eleven cents per thousand gallons for the water which it distributes. This argument entirely ignores the fact that one-half of the water which the company distributes comes from its own source of supply and reaches consumers through a gravity system at an output cost much less than the water obtained from the Mountain Water Supply Company. "Establishing a schedule of the rates or tolls that

a public service company may lawfully demand is one of the most complicated and important of all the many important tasks imposed by the legislature on the Public Service Commission. The proper determination of such questions necessarily involves the consideration of many matters and things far removed from the atmosphere of an appellate court of law": Baltimore & Ohio R. R. Co. v. Public Service Commission, 66 Pa. Superior Ct. 412. "It is, therefore, to be regarded as a settled principle that, under such legislation as that with which we are here dealing, in an appeal from an order of the Public Service Commission, the inquiry of the court is not, whether the order is such as the court would have made in the exercise of administrative function, but whether the order was a reasonable exercise of the discretion conferred upon the commission by the statute": Ben Avon Borough v. Ohio Valley Water Co., 260 Pa. 300. In determining these mixed questions of law and fact, the court confines itself to the ultimate question as to whether the commission acted within its power. The appellants called two experts who testified as to the "Ready to Serve" rates and meter rates proper to be charged by this company. One of those witnesses testified that the uniform rate for output charge should be eleven cents per thousand gallons of water. The other testified that the meter rate for consumers using 20,000 gallons of water or less per quarter ought to be twenty cents per thousand gallons, and for quantities in excess of 20,000 gallons per quarter the rate should be eleven cents per thousand gallons. The appellants ought not to complain that the commission fixed a meter rate fully warranted by the testimony of their own witnesses.

The complaint that the commission erred in fixing the effective date of the schedule as August 1, 1918, without making any order as to the rates which should be paid by consumers who had not paid during the pendency of the litigation, is without merit. No complaint having been filed within the period fixed by the statute after the

company had filed its schedule of rates, adopted in December, 1913, that rate became effective. When the complaints were filed, the first day in August, 1914, it became the duty of the Public Service Commission to proceed in the manner defined by Section 3, Article V, of the Public Service Company Law, of July 26, 1913, P. L. 1375. Before a schedule of rates may be promulgated and made effective by the Public Service Commission, in such circumstances, it is the duty of the commission; to find whether or not the existing rates and charges are unjust or unreasonable; then it is the duty of the commission to determine and prescribe the just, due, equal and reasonable rates and charges to be thereafter established; the order of the Public Service Commission establishing the rates must then be served upon the public service company in the manner provided by the statute; and the rates and charges thus established shall thereafter be charged and observed by the public service company. The consumer who may have paid a rate that the commission has found to be unjust is not, however, without remedy, for section 5 of article V of the statute confers upon the Public Service Commission the right, under certain conditions, to award to the consumer reparation, the amount of which is to be measured by the damage that such complainant petitioner may show that he has actually sustained. It is contended on behalf of the Borough of Greensburg and the other municipalities which are appellants that, because certain individual consumers have, while the litigation was pending, paid rates which the commission has found to be excessive and that the water company has thus received a larger amount of money than it was entitled to collect in the aggregate from all sources, that the water company ought not to be permitted to collect anything from the municipalities until after it has made reparation to the individual consumers to an extent which will make the total income of the company during the period of the litigation less than the company ought to have received as

a fair return upon its investment. The Public Service Commission did not find that the rate charged against the Borough of Greensburg in the schedule filed by the water company was either unjust or excessive, but, on the contrary, it did find that that rate was too low and increased it. That borough certainly is not, therefore, entitled to reparation, in its own right. Yet it is argued that because other boroughs and many private consumers, some of whom reside within the borough and others far beyond its limits, have in the aggregate paid to the water company more money than the company ought to have demanded, the Borough of Greensburg ought not to be required to pay anything. This is simply a proposition to confiscate, for the benefit of the borough, the damages which may possibly be due to other parties, in case those parties do not see fit to assert their own rights in the manner by the statute provided. When the appellant boroughs moved the commission to make the order, the refusal of which is here complained of, it clearly appeared that those boroughs were not entitled to reparation and the record discloses that no petition for reparation had been presented by any individual consumer. "But the question of reparation is not to be determined by the commission until presented to it in the manner prescribed by the act of assembly, nor should the question be prejudiced by any general order in advance of a hearing," such as these appellants were seeking to procure: Ben Avon Borough v. Ohio Valley Water Co. (No. 2), 260 Pa. 310. The commission very properly refused to make any order as to reparation, in advance of any petition duly presented and a hearing thereupon.

The determination of the Public Service Commission is affirmed and the appeal dismissed; the costs to be paid by the appellant.