## VANDALIA RAILROAD COMPANY *v.* SCHNULL ET AL., COMPOSING THE FIRM OF SCHNULL & COMPANY, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 125. Argued December 16, 17, 1920.—Decided February 28, 1921.

1. A railroad rate fixed by state authority violates the Fourteenth Amendment if it does not yield the carrier a reasonable return upon the class of traffic to which it applies. P. 119.
2. A rate which, so tested, is deficient, is not saved by the fact that the intrastate business as a whole is remunerative. *Id. Northern Pacific Ry. Co.* v. *North Dakota*, 236 U. S. 585; *Norfolk & Western Ry. Co.* v. *West Virginia*, 236 U. S. 605.

3. An answer should be construed with recognition of its implications and with regard to the issue to which it is addressed. P. 121.

4. In reviewing the decision of a state court upholding a state railroad rate against a charge of confiscation, this court will follow that court in assuming that the issue was sufficiently raised by the pleadings and defined by the evidence. P. 122.

5. In a suit by shippers to enforce obedience by a railroad company to an order of a state commission fixing rates, *held* that a contention, made by the plaintiffs for the first time in this court, to the effect that the company's remedy was by direct review of the order under the state law, could not be entertained where the state court, without referring to such remedy, had considered the company's defense of confiscation upon the merits and decided against it. *Id.*

6. A bill brought by a railroad company against a state commission to enjoin enforcement of an order fixing rates assailed as confiscatory, was dismissed without prejudice, because inadequacy of the rates was not proven by the evidence. *Held,* not *res judicata* in a subsequent suit by shippers against the company to compel it to observe the order *in futuro.* P. 123.

188 Indiana, 87, reversed.

THE case is stated in the opinion.

*Mr. D. P. Williams,* with whom *Mr. Samuel O. Pickens, Mr. Frederic D. McKenney, Mr. Charles W. Moores, Mr. R. F. Davidson* and *Mr. Owen Pickens* were on the briefs, for plaintiff in error.

*Mr. Karl Knox Gartner,* with whom *Mr. Gibbs L. Baker, Mr. Charles W. Smith, Mr. Henry H. Hornbrook, Mr. Charles Remster, Mr. Albert P. Smith* and *Mr. Paul Y. Davis* were on the briefs, for defendants in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Defendants in error, alleging themselves to be engaged either as wholesale or as retail grocers in Indianapolis, Indiana, brought this suit against plaintiff in error, herein

called the Railroad Company, to restrain it from charging or receiving any other compensation than that mentioned and described in an order entered by the Railroad Commission of the State on December 14, 1906, and which, it is alleged, became effective February 1, 1907, and to require the Railroad Company to receive and transport freight at the rates prescribed in the order of the Commission.

The first pleading of the Railroad Company was a demurrer to the complaint. We omit it, as it was overruled and as the case depends upon the answer of the Railroad Company and a demurrer to it. It was in three paragraphs. In the first it denied "each and every material allegation" of the complaint. In the second it alleged that the order of the Commission would not yield "revenue sufficient to reimburse defendant for its actual cost and outlay in handling and carrying the classes of property specified in said order, . . . and provide a fair return to defendant on the value of defendant's property used" in the service; and that, therefore, if the order of the Commission should be enforced, the Railroad Company would be deprived of its property without due process of law in violation of the Fourteenth Amendment. In the third paragraph it alleged that within 60 days after the act of the State took effect it filed with the Commission a schedule of its rates and charges between all of the points in the State, that it had kept on file a like schedule in every station and depot and in its offices, that its charges had been in accordance with such schedules and were legal rates for the service, and that complainants (defendants in error) had not been and were not damaged thereby. Dismissal of the suit was prayed.

There was a demurrer to the second paragraph for insufficiency to constitute a defense, and, following the local practice, there was a memorandum specifying the grounds, as follows: (1) There was no statement that the

order of the Commission was unremunerative or confiscatory at the time it was made, or at the time suit was brought, but only at the time the answer was filed. Nor did it aver that at either of those times the rates would not pay the cost cf the service to which they were applicable and leave the company a fair return upon the property used in the service. (2) Nor aver that, when taken in connection with the other rates lawfully prescribed by the Commission and its successor, the Public Service Commission, the rates did not afford an adequate and remunerative compensation for the handling and transportation of all classes of freight or passengers covered by such orders. (3) The averment that the rates were not compensatory "states no issue of fact, but the mere conclusion of the pleader as to a material fact." (4) The answer did not profess to set out the schedules of rates filed with the Commission or posted in the offices of the Railroad Company. And further, that, if the schedules of rates varied from those of the Commission, they were thus far unlawful and invalid under the laws of the State and constituted no defense to the action; "the mere continuance in such wrongful conduct" did "not constitute a defense." And further, if the rates charged were the same as those prescribed by the Commission, the fact could be proved under the general denial.

The demurrer was sustained by the court and the Railroad Company ruled to answer by September 5, 1916. The company elected to stand by its answer and declined to plead further. The case, therefore, rested on the complaint and the denial of its allegations by the Railroad Company, and upon the issue thus made there was a trial upon which there were admitted in evidence over the objection of the Railroad Company, a transcript of the record of the suit brought by the Railroad Company against Union B. Hunt, et al., constituting the Railroad Commission of the State, in the District Court of the

United States for the District of Indiana, and a transcript of the record in the same case in this court, entitled *Wood v. Vandalia R. R. Co.,* 231 U. S. 1, and, over objection, the proceedings before the Railroad Commission under which the order was made, establishing the rates that are the subject of controversy.

The court enjoined the Railroad Company from charging, collecting or receiving from plaintiffs and others in like situation other rates than those mentioned in the order of the Commission, and enjoined the rates in excess thereof. The decree specifically mentioned the rates to be charged. It was affirmed by the Supreme Court of the State.

It will be observed, therefore, that one of the grounds of the demurrer to the second paragraph of the answer of the Railroad Company was, not that the rates were not non-compensatory, but that they were not alleged to be so at the time of the order of the Commission or at the commencement of the suit, but were only alleged to be so at the time of filing the answer. The Supreme Court seems to intimate concurrence in this view of the answer, but said, whether its ruling were based on that construction of the answer "or upon the evidence heard," it was satisfied that the railroad had "not tendered or made a defense, and that the decision" of the trial court was correct.

The court put in contrast the contentions of the parties as follows: "Appellees [plaintiffs] assert that, for all that thus appears, appellant may receive sufficient net income on all its other business on this division, and on all of its business, including the specified classes, on other divisions, to furnish it a fair return on all its investments and operations, including the transportation of these classes, and therefore appellant will receive all to which it is entitled, though this order be enforced." "Appellant [Railroad Company] asserts that the State has no power

to thus segregate a certain class of traffic and require the railroad company to carry that traffic at unremunerative rates."

The cases that were adduced to sustain the respective contentions the court enumerated, but considered that there was "little or no conflict" in them and that any confusion in them "almost altogether disappears" when they "are read in view of the fundamental principles involved." The court's conclusion from the cases was, that "a carrier is entitled to fair remuneration on all its investments and property. It is entitled to no more. For this it undertakes to reasonably serve in the capacity chosen by it. It undertakes to serve for no less. If the carrier receives, in the aggregate, such fair remuneration, notwithstanding the rates on a part of its business are not remunerative, the carrier has no basis for complaint." And further, "When a rate on a part of the business is too low, some other part of the carrier's business may be paying too much, thus preventing a deficiency of income which would otherwise result from the nonremunerative rates. In such cases the shippers affected by the higher rates may have a basis for complaint. *Smyth* v. *Ames*, 169 U. S. 466, op. 540, *et seq.*" The court considered that the principle of the proposition announced was in its opinion "strongly upheld" in *Wood* v. *Vandalia R. R. Co.*, which the court regarded "to say the least" as holding that the hearing upon the character of rates "is not properly confined to the particular rates and the 'actual cost and outlay' in carrying the classes specified on a specified division in ascertaining whether a fair return is provided."

The court, therefore, makes clear the federal question, and its decision makes the question precise by a contrast of the contentions of the parties. Let us repeat them: that of the Railroad Company is that the revenue from traffic to which the rates apply is the test of their legality

and any deficiency in them cannot be made up by rates on some other traffic; that of the defendants in error is that the revenue from all of the intrastate business of the Railroad Company is to be taken into account, and, if it be sufficient to remunerate the Railroad Company, the particular rates, though unremunerative, are nevertheless legal.

The question presented by the contentions is not easy of off-hand solution, though its elements are easy of declaration. A railroad is private property, and as such a rate may be fixed for its use; but it is private property devoted to the public service, and as such it is subject to the power of the State to see and require that the rate fixed be just and reasonable, one that, while it will yield a revenue to the railroad, will be proportioned to that which should be charged to the public. And this relation of right and power is illustrated in many cases. It is declared in *Northern Pacific Ry. Co.* v. *North Dakota,* 236 U. S. 585, and a test of it given, that is, when the right must yield to the power and when the power is limited by the right. And there was a consideration and review of all of the elements involved. It was declared that the legislature "has a wide range of discretion in the exercise of the power to prescribe reasonable charges, and is not bound to fix uniform rates for all commodities or to secure the same percentage of profit on every sort of business. .. . . It is not bound to prescribe separate rates for every individual service performed, but it may group services by fixing rates for classes of traffic." And this court will not sit in judgment upon such action and substitute its judgment for that of the legislature when reviewing "a particular tariff or schedule which yields substantial compensation for the services it embraces, when the profitableness of the intrastate business as a whole is not involved." "But" the court said, "a different question arises when the State has segregated

a commodity, or a class of traffic, and has attempted to compel the carrier to transport it at a loss or without substantial compensation even though the entire traffic to which the rate is applied is taken into account. On that fact being satisfactorily established, the presumption of reasonableness is rebutted." And further, "it has repeatedly been assumed in the decisions of this court, that the State has no arbitrary power over the carrier's rates and may not select a particular commodity or class of traffic for carriage without reasonable reward." It was, hence, concluded that where there is such segregation and a rate imposed which would compel the carrier to transport a commodity "for less than the proper cost of transportation, or virtually at cost" the carrier would be "denied a reasonable reward for its service," and "the State has exceeded its authority."

The case and its principle were followed and illustrated in *Norfolk & Western Ry. Co.* v. *West Virginia,* 236 U. S. 605, and the principle applied to a passenger rate. It was there said, explaining the "range of permissible action" by a State, that the State "has no arbitrary power over rates; . . . and that the State may not select a commodity, or class of traffic, and instead of fixing what may be deemed to be reasonable compensation for its carriage, compel the carrier to transport it either at less than cost or for a compensation that is merely nominal." See also *Brooks-Scanlon Co.* v. *Railroad Commission of Louisiana,* 251 U. S. 396.

These cases leave nothing to be said, nor need we review the prior cases from which they are deductions. The concession of counsel is "that it may be admitted that the *North Dakota* and *West Virginia Cases* have greatly discredited the previous theory and practice under which a rate which returned any revenue over and above 'out of pocket' costs was considered to be constitutionally remunerative. . . ." Counsel are mis-

taken in their judgment of those cases. They did not discredit what had been announced of either theory or practice, they only removed them from misunderstanding and controversy and declared a principle that assigned to the State a useful power of regulation while it accorded to railroads a reasonable return upon the capital invested and a reward for enterprise; a principle, therefore, which keeps power and right, in proper relation, if we may repeat ourselves, power not exercised in excess, right not used in abuse.

It is, however, contended by the defendants in error that the averments of the answer (second paragraph) are not sufficient to present the issue of law based upon it because it does not allege that the rates are not compensatory of the cost of the service "between the stations to which the rate applies" and that, therefore, it may well be that they are remunerative of that service, and "only be non-remunerative when applied to some other carriage." And it is further urged that the answer fails to specify upon what part of the carrier's property the rates will not yield a fair return, and that it is consistent with the answer that there may be a fair return on the value of the property "used in carriage between the stations named in the order, although not sufficient to 'provide a fair return on the value of . . . property used and employed in handling and carrying the classes of property in said order specified' over some other part of its line."

The distinctions are artificial and strained. They are an attempt to make the necessary implications of the answer no part of it. The averment of a pleading need not be so certain that an affirmative allegation of the existence of a fact or condition must be accompanied by the negation of that which is contradictory to it or inconsistent with it. The answer besides is addressed to the complaint and to the rates and order of the Commis-

sion that constitute the bases of the complaint and puts
them and the effect of them in issue. In other words,
the complaint deals with the rates and service between
designated stations, and the answer deals with those
rates and that service. And the Supreme Court so re-
garded it and explicitly said that the evidence made the
issue. Counsel attack the conclusion as unsupported
but we must accept it as it is the judgment of the court
we are reviewing and it is to be estimated by the reasons
given for it.

We, therefore, repeat, we regard the answer as a reply
to the complaint and as alleging the invalidity of the order
of the Commission because it required a service that the
rates did not compensate, and necessarily this involves a
consideration of all of the elements which are involved in
that service and determine its effect. It is to be re-
membered that we are dealing with a pleading. What
the evidence may show we can neither know nor anticipate.

Another contention of defendants in error is that the
law of the State prescribes the remedy to be pursued
against an order of the Commission to be to procure from
the secretary of the Commission a transcript of the pro-
ceedings before the Commission and file such transcript
with a statement of the causes of complaint against the
action of the Commission in the office of the clerk of the
Appellate Court of the State within a designated time,
and give notice to the Commission. And it is said, the
Appellate Court is given power to affirm the action of
the Commission or to change, modify, or set it aside as
justice may require, and that its judgment is made final.
This procedure was not followed, it is said, and that hence
the answer (paragraph 2) of the Railroad Company "was
not a compliance with this requirement of the substantive
law of Indiana," and "for this reason failed to state a
defense."

The contention is made for the first time in this court.

Its lateness may not militate against it, but that it did not occur sooner to counsel and not at all to the Supreme Court, demonstrates its unsoundness. It is to be remembered that this is a suit, not by the Railroad Company but against the Company, and its purpose is to enforce rates established by the Railroad Commission, which the Railroad Company is resisting. The decision of the Supreme Court upon the grounds of suit and resistance is here for review, and we must assume that all that was pertinent to either the court considered, and regarded all else untenable, including the contention now urged by counsel. It must, therefore, be rejected.

The final contention of defendants in error is that *Wood* v. *Vandalia R. R. Co.*, 231 U. S. 1, is *res adjudicata* of the issues in this case. The suit was by the Railroad Company to restrain the order of the Commission involved in the present litigation, and the ground of attack was, as it is here, that the rates ordered were not compensatory of the service to which they applied. The averments of the bill we held unsustained by the proofs and nothing more was decided. The judgment was not that the order of the Commission was valid but that it was not shown by the bill to be invalid, and the bill was dismissed without prejudice. That is, without preclusion of the right to show it invalid when attempted to be enforced at a subsequent period. *Missouri* v. *Chicago, Burlington & Quincy R. R. Co.*, 241 U. S. 533, 539, 540. We cannot therefore yield to the contention.

It follows that the decree must be reversed and it is

*So ordered and the case remanded for further proceedings not inconsistent with this opinion.*

MR. JUSTICE DAY, MR. JUSTICE PITNEY, MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE, dissent.