Baltimore and Ohio Railroad Company et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued October 11, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Edward A. Kaier,* with him *Windsor F. Cousins,* for appellants.

*Samuel Graff Miller,* with him *Edward Knuff,* for appellee.

22

OPINION BY PARKER, J., March 3, 1939:

This is a rate case involving transportation charges by certain railroad carriers. The legal questions involved are practically the same as those in the case of *Penna. Railroad Co. v. P. U. C.*, 135 Pa. Superior Ct. 5, 4 A. (2d) 622, an opinion in which case has been handed down this day, and the facts involved are quite similar. We will as far as possible avoid a repetition of what was there said. We are all of the opinion that the order made by the Public Utility Commission must be reversed.

The Silicon Products Company, a corporation engaged in the production and sale of molding sand, filed a complaint with the Public Service Commission (now Public Utility Commission) alleging that the railroad rates for the transportation of molding sand in open top cars from Daguscahonda, in Elk County, to destinations in Pennsylvania within two hundred miles of the origin point were unreasonable and unduly prejudicial to the complainant when compared with rates fixed for shippers from Polk and Utica, Pennsylvania. The complainant's sand is an industrial sand used for molding heavy steel castings and the western Pennsylvania markets for this sand are largely in the Pittsburgh district.

Daguscahonda is on the line of the Pennsylvania Railroad and the rates attacked in the complaint are based upon a scale known as the West Penn, or Davison scale under which rates for transportation over two or more lines of railroad are made twenty cents per ton higher than rates for equal distances over a single line of railroad. This twenty cents is usually referred to as a joint-line "arbitrary." The assailed rates were prescribed by the Public Service Commission in *Silicon Products Co. v. P. R. R. Co. et al.*, 9 Pa. P. S. C. 729 (1929), a case prosecuted by this same complainant. The West Penn scale applies by virtue of an order of the Interstate Commerce Commission from all points in western Pennsylvania to all adjacent states except

Ohio, and from all adjacent states, including Ohio, to Pennsylvania, and as to intrastate hauls, by various orders of the state commission, generally over the entire western part of the state.

Insofar as the questions raised on this appeal are concerned, the complainant sought to have the commission eliminate the joint-line "arbitrary" and substitute for joint-line hauls a scale of rates known as the Ohio scale. The Ohio scale prescribed one scale to apply to both single-line hauls and joint-line hauls and was made higher than the West Penn single-line scale but lower than the West Penn joint-line scale: *Rates on Crushed Stone, Gravel, Sand, and Slag in Ohio*, 191 I. C. C. 206, 221, 223. Polk is located on the New York Central Railroad and Utica on the Erie Railroad and the rates from those two points were prescribed on the basis of the Ohio scale for joint-line hauls and the West Penn scale for single-line hauls in *Industrial Silica Corp. v. B. & O. R. R. Co. et al.*, 16 Pa. P. S. C. 122. The Public Utility Commission, which succeeded the Public Service Commission, found the joint-line rates unreasonable, notwithstanding a finding that the cost of the additional service involved in joint-line transportation was generally greater than the twenty cents by which these rates exceeded the approved single-line rates, but held that this cost must be disregarded in order that the complainant in shipping to markets reached by joint-line hauls might be aided in competing with shippers who can reach such markets by a single-line haul. It followed the Polk-Utica case, finding that the joint-line rates were discriminatory and prejudicial and directing that the joint-line rates be reduced to the basis of the Ohio scale, but that the carriers continue to maintain the single-line rates on the basis of the lower West Penn scale although the Ohio scale was designed to apply to both single and joint-line hauls. From the findings and order this appeal was taken. We have taken this statement of facts from the appel-

lant's paper book which the commission, in its brief, states are correctly set forth.

This proceeding was initiated by Silicon Products Company which alleges an undue and illegal preference or discrimination. The burden of proof was on the complainant to prove such discrimination: Public Utility Law, §312 (66 PS §1152); *B. & O. R. R. Co. v. P. S. C.,* 66 Pa. Superior Ct. 403, 406; *Penna. R. R. Co. v. P. U. C.,* supra. It appears here that the very rates complained of had been prescribed by the state commission *(Silicon Products Co. v. P. R. R. Co.,* supra) in a case which was instituted by this complainant. In *Cheltenham & Abington S. Co. v. P. S. C.,* 122 Pa. Superior Ct. 252, 264, 186 A. 149, we stated the applicable rule as follows: "It follows with even greater force that when the commission has prescribed rates after fixing fair value and reasonable return, the findings made by the commission as then constituted and unappealed from, may be assumed to be fair, just and reasonable in the absence of proof that there is either a change of factual circumstances, a mistake as to facts previously found or the commission followed an improper course in arriving at its legal conclusions. Such former conclusions are not res adjudicata for the law contemplates by its express terms a re-examination when conditions change, but the burden is on complainants in such case to show facts or circumstances that warrant a different conclusion."

The commission's report is subject to the criticism that we made in the preceding case involving the Lycoming scale in that the primary findings of fact are not as explicit as they should be: *Scranton-Spring Brook Water S. Co. v. P. S. C.,* 105 Pa. Superior Ct. 203, 209, 160 A. 230; *U. S. v. Chicago, M. St. P. & P. R. Co.,* 294 U. S. 499, 55 S. Ct. 462. Section 1005 of the Public Utility Law (66 PS §1395) provides: "Its findings shall be in sufficient detail to enable the court on appeal, to determine the controverted question presented by the

proceeding, and whether proper weight was given to the evidence."

The decision of the commission in this case is a radical departure from the previous decisions of the state commission and is in conflict with the rates prescribed by the Interstate Commerce Commission for traffic into the Pittsburgh district and other western Pennsylvania points. The federal commission, discovering that there was a hodgepodge of scales in force in the territory with which we are concerned, made an extended study of rates affecting transportation of sand, gravel, crushed stone, slag, etc., in all of northeastern United States in *Industrial Sand Cases*, 188 I. C. C. 99 (1930), 204 I. C. C. 159 (1934). That decision recognized, among others, the three rate structures with which we are concerned, the Buckland (Lycoming) scale, the West Penn (Davison) scale, and the Ohio scale. The Buckland (Lycoming) scale was applied to territory east of a north and south line drawn through Cumberland, Maryland, and the West Penn scale to territory west of that line. Daguscahonda is located near the dividing line and, for reasons satisfactory to all concerned, was considered as if in the West Penn territory. The Ohio scale was applied to shipments from Pennsylvania to Ohio but not to shipments from Ohio to Pennsylvania, as we have stated. The Buckland and West Penn scales each fixed a base rate for single-line hauls and allowed a so-called "arbitrary" of twenty cents per ton to be added thereto to fix the rate for joint-line hauls. The rate for single-line hauls under the Buckland schedule was ten cents per ton higher than the single-line rate under the West Penn schedule. The Ohio scale made the rate the same for single-line and joint-line hauls but made the single-line rates higher than the rates under the West Penn scale, thus attempting to compensate the carriers for the extra cost of a joint-line haul. In the present case the commission applied the Ohio scale to joint-line

hauls and the West Penn schedule to single-line hauls, thereby penalizing the carriers to that extent.

Producers of industrial sand in the Lycoming district are in competition with those located in western Pennsylvania and adjacent states as to the Pittsburgh and western Pennsylvania markets, and all these producers have occasion to make some use of joint-line hauls. In some cases the hauls are almost exclusively joint-line hauls. Prior to the order in this case the Lycoming scale with the twenty cents "arbitrary" had been applied universally by our state commission in fixing rates for transportation of sand, gravel, etc., from origins in eastern Pennsylvania and it had used the West Penn scale, with like differential, generally in western Pennsylvania,[1] the exception being the rates prescribed for Utica and Polk.

The primary criticism of the commission's report is that it has failed to make any primary findings of fact that will sustain its conclusion. This, no doubt, was due to the failure of the complainant to furnish the necessary evidence. The burden of proof was on the complainant and, if it failed to support its charges, it is not entitled to relief. We find that the commission has given three reasons for its ultimate conclusion which it apparently intended as findings of fact. The report sets forth that (a) an examination of the West Penn, Ohio, and Lycoming scales shows that "it is obviously necessary to properly align the joint rates throughout this general territory"; (b) "it is shown by a mathematical calculation that the average cost of interchang-

---

[1] Davidson & Bro. v. P. R. R. Co., 8 Pa. P. S. C. 658 (1927); T. A. O'Leary, Inc. v. B. & O. R. Co., 8 Pa. P. S. C. 664 (1927); Foxburg Silica Co. v. P. R. R., 9 Pa. P. S. C. 447 (1928); Falls Creek Sand & Stone Co. v. B., R. & P. Ry. Co., 9 Pa. P. S. C. 495 (1929); Silicon Products Company v. P. R. R., 9 Pa. P. S. C. 729 (1929); Ellwood Stone Co. v. B. & O. R. Co., 10 Pa. P. S. C. 127 (1929); Industrial Silica Corp. v. Aliquippa & S. R. Co., 10 Pa. P. S. C. 426 (1930); Ellwood Stone Co. v. B. & O. R. Co., 10 Pa. P. S. C. 577 (1930).

ing freight between carriers exceeds 20 cents. These conditions and expenses are very general in nature and when considered in connection with a very small volume of the total traffic do not warrant serious consideration"; and (c) the producers at Polk and Utica have been given special treatment and those producers have been able to sell more sand than the complainant has been able to sell and therefore special rates should be prescribed for complainant. "All traffic does not have a 20-cent differential for joint-line hauls."

The evidence in the record supplied by the complainant was meager, being confined to a proof of the different rates in force at various points and evidence as to the inability of the complainant to compete with the producers at Utica and Polk.

We are of the opinion that the ultimate conclusion of the commission is not supported by the necessary primary findings of fact and that the evidence does not support such primary findings as were made. In addition, unless all the proofs offered by respondents, some of them indisputable, are ignored, such evidence as there is in the record can lead only to a contrary conclusion.

The commission first says that "it is obviously necessary to properly align the joint rates." That is not a primary finding but the mere assertion of a conclusion. When we examine the record we do not have any findings of fact to support the conclusion and such evidence as was supplied by the respondents is to the contrary. More important, however, even if this conclusion were accepted, it does not follow that the revision should be made as was here done.

The only claim of support for the assertion that the joint haul rates must be properly aligned or that they are not proper is that this complainant has been unable to compete with producers at Utica and Polk. Such inability to command business may be due to geographical location, quality of product, salesmanship, or other causes, any one of which would account for the inability

to compete. The evidence does not disclose what the true reason is or a reason for discarding any one of the possible causes. "The law does not attempt to equalize fortune, opportunities, or abilities": *I. C. C. v. Diffenbaugh,* 222 U. S. 42, 32 S. Ct. 22. Also, see the opinion handed down this day in *Penna. R. R. Co. v. P. U. C.,* supra. There is not any evidence in the record warranting an adoption of the special scale prescribed for Polk and Utica and the discarding of the general scale adopted by the federal and state commissions after painstaking study. It is a case of following the exception and not the rule without any evidence justifying such a course. If there were special reasons for abandoning the whole scheme of rates for western Pennsylvania, such reasons should have been shown by the complainant and the burden was on it to establish such facts.

The commission indicates the desirability of aligning the joint haul rates but that is precisely what they have not done. The commission found as a fact: "It is shown by a mathematical calculation that the average cost of interchanging freight between carriers exceeds 20 cents [per ton]." It was also shown in the record that the cost of interchange increases in inverse ratio to the amount of traffic and that the traffic at the exchange point for Daguscahonda is light. Yet the commission allowed much less than twenty cents per ton. The carrier is entitled to the cost of performing service with a reasonable profit and all its outlays must be considered: *No. Pac. Ry. Co. v. North Dakota,* 236 U. S. 585, 35 S. Ct. 429; *Vandalia R. Co. v. Schnull,* 255 U. S. 113, 41 S. Ct. 324; *P. R. R. v. Phila. Co.,* 220 Pa. 100, 116, 68 A. 676; *York v. P. S. C.,* 85 Pa. Superior Ct. 134.

There is a further pertinent fact which shows that the commission did not, in fact, align the rates. This is shown by the result reached here when compared with the Ohio scale. When the Ohio scale was made to apply to shipments from Pennsylvania to Ohio, it fixed one rate for single-line hauls and joint-line hauls and that

rate was higher than the West Penn single-line rate and lower than the West Penn joint-line rate, thus taking care of the extra cost of interchange by distributing it over all of the business. In this case the commission adopted the Ohio scale for joint-line hauls and the West Penn scale for single-line hauls. The result was that the entire burden of relieving one patron was placed on the carriers. The commission also suggests that no differential has been allowed in handling first class freight. We understand that to be the fact, but the rates for common sand are approximately one-tenth of the rates charged for first class freight, and there is not any room to absorb the extra cost of interchange in the case of sand and gravel without doing grave injustice to the carriers.

The conclusion at which we have arrived is in precise accord with the decisions of the Interstate Commerce Commission. After the Industrial Silica Corporation secured a special rate on industrial sand shipped from Polk and Utica (16 Pa. P. S. C. 122), that corporation, which also produced industrial sand at points in eastern Ohio which it marketed in Pennsylvania, made the same complaint to the Interstate Commerce Commission with reference to the charges for joint-line hauls that had been made to the Pennsylvania Public Service Commission. The Interstate Commerce Commission applied the principles previously determined in *Industrial Sand Cases,* supra, and adhered to the West Penn scale for shipments from Ohio into Pennsylvania. The decision of the state commission in this case is in direct conflict with the decision of the federal commission. Even though the decision of the Interstate Commerce Commission is not binding on us, it is entitled to much weight. It also discloses a situation which means a breaking down of the whole rate structure applied to sand, gravel and crushed stone, erected after much thought and study, if the present order is allowed to stand, and

shows a serious detrimental effect on interstate commerce.

We do not know and are not now concerned with the question as to whether a differential should be generally allowed between joint and single-line hauls, but granting that a change should be made it can only be made after the production of evidence warranting the change and a consideration of such facts. The burden was here upon the complainant to make out its case and it failed to furnish any evidence to support the claim of discrimination. The order must therefore be reversed.

The order of the commission is reversed, costs to be divided equally between complainant and the commission.