THE CENTRAL RAILROAD COMPANY OF NEW JERSEY AND THE NEW YORK & LONG BRANCH RAILROAD COMPANY, EACH A CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, APPELLANTS, v. THE DEPARTMENT OF PUBLIC UTILI-TIES, BOARD OF PUBLIC UTILITY COMMISSIONERS, STATE OF NEW JERSEY, RESPONDENT.

Argued February 26, 1951—Reargued April 2, 1951—
Decided May 21, 1951.

Mr. *Augustus C. Studer, Jr.,* and Mr. *Charles D. Peet* of the New York Bar, argued the cause for the appellants.  Mr. *Judson C. McLester, Jr.,* of the New York Bar, on the brief. (*Messrs. McCarter, English & Studer,* attorneys.)

*Mr. William A. Roberts*, of the District of Columbia Bar, argued the cause for the intervenors, Inter-Municipal Group for Better Rail Service and Jersey Shore Protective Committee. *Messrs. Warren Woods* and *Morton R. Calane*, of the District of Columbia Bar, on the brief. (*Mr. Augustus S. Dreier*, attorney for Inter-Municipal Group for Better Rail Service, and *Mr. Lawrence A. Carton*, attorney for Jersey Shore Protective Committee.)

The opinion of the court was delivered by

BURLING, J. This is a rate of fare case and involves an appeal by The Central Railroad Company of New Jersey and The New York & Long Branch Railroad Company (hereinafter referred to as the Railroads), each a New Jersey corporation, from a final decision on rehearing and order of the Board of Public Utility Commissioners, Department of Public Utilities, State of New Jersey (hereinafter referred to as the Board), filed on September 27, 1950, stemming from a written complaint termed "Petition for Reconsideration" lodged with the Board on July 5, 1949, by the Inter-Municipal Group for Better Rail Service and the Jersey Shore Protective Committee (hereinafter referred to as the Intervenors). The appeal, addressed to the Appellate Division of the Superior Court, has been certified to the Supreme Court upon our own motion, prior to hearing there.

The progress of the proceedings now presented to us for examination may be outlined as follows: As a result of proceedings before the Board in 1947, a schedule of fares then found by it to be reasonable for the future was inaugurated by the Railroads. The Railroads receiving less additional income from new fares under the 1947 schedule than anticipated, on June 4, 1948, filed with the Board certain proposed new tariffs to be effective July 5, 1948, publishing increased local and joint passenger commutation fares in intrastate traffic and changes and alterations in existing classification of such fares. The Board on its own motion

initiated a hearing to determine whether those proposed fares, changes and alterations as filed would be unjust, unreasonable or unjustly discriminatory. By order, under date of June 23, 1948, effective July 3, 1948, the Board suspended the aforementioned proposed increases, changes and alterations in local and joint intrastate passenger fares until October 3, 1948, and not having reached a decision on the evidence and testimony offered at public hearings pursuant to that order, on September 22, 1948, effective October 3, 1948, ordered a further suspension to January 3, 1949. The hearings were not completed when the year 1948 drew to a close, and it was stipulated by all interested parties that the latter order of suspension should continue in effect "beyond its legal limit and be concurrent with" a similar order issued by the Interstate Commerce Commission. Joint hearings by an examiner of that Commission and members of the Board which had been instituted on September 8, 1948, continued. The Board ultimately reached a conclusion and filed a decision on March 15, 1949, to the effect that the existing schedule of commutation fares (effective as a result of the proceedings in 1947) of the Railroads had become unjust and unreasonable, that the schedules of fares proposed and filed on June 4, 1948, by the Railroads were unjust and unreasonable and were disapproved, that an increased scale of rates which were over the rates in effect when the Railroad filed their proposed schedules in June, 1948, and set forth in the decision was just and reasonable and new schedules might be filed with the Board on five days' notice in conformity with that scale. Resultant increased fares were made effective March 27, 1949. Subsequently, on July 15, 1949, the Intervenors filed with the Board a "Petition for Reconsideration" addressed to both the Board and the Interstate Commerce Commission but relating primarily to the latter's findings and order, to which no answer was filed by the Railroads. This petition, however, stirred the Board to an exercise of its statutory authority to order a rehearing on its own initiative by means of a "Decision,"

dated March 6, 1950. The Board clearly indicated this action was taken on its own motion. The rates placed in operation March 27, 1949, were not disturbed.

Subsequently, hearings in the rehearing proceedings were had, namely, on March 30, 1950, May 17, 1950, and May 26, 1950.

During the course of the hearing on May 26, 1950, a witness for the Railroads was asked a series of 12 questions (hereinafter considered) relating to various items of expense and income. The Board at first ordered, June 14, 1950, that these questions, objected to on the ground of immateriality, be answered by the Railroads, but later, June 21, 1950, rescinded the prior order as premature because written briefs had not been received. On August 8, 1950, the Board in another decision stated:

"We think the questions are relevant and believe the respondent should have an opportunity to supply the answers if it elects to do so. We have concluded that we will not order it to respond to these questions."

The Railroads declined to answer the propounded interrogatories but indicated willingness to produce data maintained by them in the usual course of business from which the information sought could be elicited.

On September 27, 1950, the Board issued "Decision on Rehearing" concluding in the following language:

"The Board after reopening Docket No. 4000 for further consideration, and after such further consideration in duly held proceedings in this matter, finds that the fares approved for the respondents in the Decision of March 15, 1949, will not be just and reasonable for the future but, if revised to the bases set forth as approved in Appendix I hereto:

1. Should yield an increase in revenue of which respondents are in need and to which they are justly entitled.

2. Will be as low as respondents can be required to maintain from a cost standpoint and at the same time will be reasonably related to one another and fair to the commuting public.

3. Are necessary in order that respondents may be enabled, under honest and efficient management, to provide adequate and efficient

service, at the lowest cost consistent with the furnishing of such service, and

4. Will be just and reasonable for the future.

On further consideration, the findings in the Board's decision of March 15, 1949, in Docket No. 4000, are modified accordingly and the Board HEREBY ORDERS respondents to file schedules with the Board to become effective October 15, 1950, in conformity with the scale approved by this Board as just and reasonable, as set forth in Appendix I hereto."

It is this decision or order that is the subject of the instant appeal.

ADJECTIVE LAW.

Forthwith, it is requisite that due consideration be given to the procedural course pursued by the Board. The record before us raises several procedural questions: Whether the method of obtaining rehearing was proper, where lies the burden of proof on rehearing and what is the scope of rehearing, and lastly what is the scope of review by this court. The applicable portions of the New Jersey statutes are:

*R. S.* 48:2–19: "Investigations; valuation of property of public utility. The board may:

a. Investigate upon its own initiative or upon complaint in writing any matter concerning any public utility; * * *"

*R. S.* 48:2–21: "Rates.

* * *

Fix rates. b. The board may after hearing, upon notice, by order in writing:

1. Fix just and reasonable individual rates, joint rates, tolls, charges or schedules thereof, as well as commutation, mileage and other special rates which shall be imposed, observed and followed thereafter by any public utility, whenever the board shall determine any existing rate, toll, charge or schedule thereof, commutation, mileage or other special rate to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential. In every such proceeding the board shall complete and close the hearing and enter its final order within six months after the filing of the order of the board initiating such proceeding, when such proceeding is on the board's own motion; and within six months after issue is joined through the filing of an answer to a complaint, when such proceeding is initiated by complaint.

* * *

Increases in rates; hearings. d. When any public utility shall increase any existing individual rates, joint rates, tolls, charges or

schedules thereof, as well as commutation, mileage and other special rates, or change or alter any existing classification, the board, either upon written complaint or upon its own initiative, shall have power after hearing, upon notice, by order in writing to determine whether the increase, change or alteration is just and reasonable. The burden of proof to show that the increase, change or alteration is just and reasonable shall be upon the public utility making the same. The board, pending such hearing and determination, may order the suspension of the increase, change or alteration until the board shall have approved the same, not exceeding three months. If the hearing shall not have been concluded within such three months the board may during such hearing and determination order a further suspension for an additional period not exceeding three months. The board shall approve the increase, change or alteration upon being satisfied that the same is just and reasonable."

*R. S.* 48:2–40. "* * * The board at any time may order a rehearing and extend, revoke or modify an order made by it."

The several questions above mentioned are hereinafter separately discussed.

### A — Method of Obtaining Rehearing.

It is insisted by the Railroads that the proper course for the Board to pursue in the event a rehearing is desired is to reserve jurisdiction by order on termination of the original proceeding. There is no specific directive in the statute to support this proposition. Indeed, the statute precludes such a step, for it directs the Board to complete and close a hearing within six months after the order initiating the original proceedings when fixing rates (*R. S.* 48:2–21b 1, *supra*) and permits no suspension of increased rates in the corollary proceeding to consider reasonableness of rate changes for more than six months. Thus the legislative intent to require final disposition of initial rate proceedings within a maximum six months period is evident. On the other hand, it is equally evident that the Legislature intended no bar to further hearings on the same subject matter, for the Board is authorized to investigate upon its own initiative or upon complaint in writing any matter (which would necessarily include fares) concerning any public utility, *R. S.* 48:2–19, *supra,* and at

any time to order a rehearing and extend, revoke or modify an order made by it, *R. S.* 48:2–40, *supra*. The comprehensive legislative design is one of continuous supervision, with a mandate to the Board to resolve initial investigations, expeditiously, and yet granting to it concomitant authority to institute corrective proceedings and especially where experience furnishes evidence of failure of an earlier order to accomplish its intended purpose.

■ We find no fault with the action of the Board in initiating a rehearing. The evident circumstance that its independent action was prompted by the Intervenors' petition is of no moment.

## B — BURDEN OF PROOF.

Much of the argument of the Railroad is directed to the burden of proof, as to justness or reasonableness of rates, to the effect that the burden of proving existing or proposed rates unjust or unreasonable should have been borne by (a) the Intervenors or petitioners for rehearing, or (b) the Board.

Reverting to the statute, *R. S.* 48:2–21*d*, *supra*, we discover that upon a hearing involving rate increases, whether ordered by the Board upon its own initiative or resulting from written complaint, the utility making the increase is forced to carry the burden of proof. It is suggested that there is no specific legislative direction of this nature in connection with rehearings.

■ The Railroads state that this court has indicated tacit approval of the proposition that the burden of proof, *i. e.*, that rates are unjust and unreasonable, on rehearing is on the Board by quoting the Board's own statement in its opinion in *Public Service Coordinated Transport v. State*, 5 *N. J.* 196, 213, 214 (1950) as follows:

"In our decision of May 5, 1948, being mindful of the uncertainties inherent in the estimates of the future results to be realized from the increased fares allowed, we expressly reserved jurisdiction in

the matter for the purpose of giving further consideration to the effect of the new fares so that if it should appear that a revision of the fare schedules therein approved should be required in the public interest, we could on our own motion institute such revision. If we had closed the proceeding and had not reserved jurisdiction, the burden of proof to show that the seven cent fare was unjust and unreasonable would have rested upon the Board, as representing the public. The result of our reserving jurisdiction is that the burden of proof to show that the seven cent fare is just and reasonable is upon the applicants. We also required the applicants to submit monthly statements of operating income under the revised fares."

A careful analysis of that portion of the opinion (*pp.* 213, 214) shows clearly that all that was there stated was the order there under review was provisional and additional notice to the public must be given where an initial hearing is ordered by the Board (*p.* 212). This court said: (*p.* 213)

"From the foregoing it is apparent that it was clear to all parties from the very outset of the 1949 hearings that this was but a continuation of the previous case, that the proceeding was still the same one that had been instituted by the companies' petition, and that the order to show cause had merely been the means of reopening the case and requiring the companies to go forward with further proof in support of their petition for a rate increase."

This leaves for us to decide whether the burden of proving justness and reasonableness of rates should be borne by the utility throughout the conduct of a rehearing which is formally ordered. We decide that it is on the utility.

■ In answer to the contention that the burden should be borne by the Intervenors it is necessary only to reiterate that the burden of justifying the reasonableness of rates is placed upon the utility by statute, *R. S.* 48:2–21*d, supra,* in *any* hearing whether ordered by the Board on written complaint or its own initiative. See *Public Service Coordinated Transport v. State* (*p.* 213), *supra.* Here, the "Petition for Reconsideration" could have been considered a written complaint; the Board, although "granting" the petition, in effect ignored it and grounded its order for rehearing on its inherent authority under *R. S.* 48:2–40 (*i. e.,* to order the rehearing

on its own initiative). This procedure was not improper and was within the scope of the statute.

### C — CONDUCT OF REHEARING

It is clear that the Board, an administrative body, acts as a legislative agency of the State in the exercise of its rate making powers. *Public Service Coordinated Transport v. State* (at *p.* 224), *supra*; *State Board of Milk Control v. Newark Milk Co.*, 118 *N. J. Eq.* 504, 521, 522, (*E. & A.* 1935); *Millville Electric Light Co. v. Board of Public Utility Com'rs. of New Jersey*, 3 *N. J. Misc.* 412 (*Sup. Ct.* 1925) affirmed *per curiam* 103 *N. J. L.* 198 (*E. & A.* 1926); *Hackensack Water Company v. Board of Public Utility Commissioners*, 96 *N. J. L.* 184 (*E. & A.* 1921). At the same time it also in many respects conducts its business in a *quasi*-judicial manner. *Lakewood Express Serv. v. Board of Public Utility Com'rs.*, 1 *N. J.* 45 (1948). We are now presented with the question whether upon a formal rehearing an administrative agency, vested with powers partaking of both legislative and judicial attributes, should consider the record of the original hearing as well as the evidence submitted to it during the course of the rehearing.

There is no doubt in our minds that the Board must consider the entire record, including the records of both the original hearing and the rehearing. Compare *Public Service Coordinated Transport v. State* (*p.* 213), *supra*. That this was understood by the Board is evident from the comments of members of the Board, counsel and witnesses at the rehearing resulting in the order of September 27, 1950, as well as from the decisions and orders of the Board handed down on March 6, 1950, and September 27, 1950.

### D — SCOPE OF REVIEW.

The legislative determinations of state administrative agencies are brought before the court pursuant to *Rule* 3:81–8

as amended September 15, 1948, the current counterpart of the former proceeding for review through the use of the prerogative writ of *certiorari*. Review in the past was taken to the former Supreme Court by *certiorari*. A legislative direction contained in *R. S.* 48:2–43 provides: "Any order made by the Board may be reviewed upon *certiorari* by the supreme court * * * The evidence presented to the board together with the findings and the order issued thereon, shall be certified by the board to the supreme court as its return.".

Prerogative writs were superseded when the Judicial Article of the Constitution became effective in 1948 and in lieu thereof review, hearing and relief was directed to be provided by rules of this court by means of actions in lieu of prerogative writs. *N. J. Const.* 1947, *Art. VI, sec. V, par.* 4. This constitutional mandate was complied with, resulting in the adoption by this court of *Rule* 3:81 and subsequent amendments thereto. *Rule* 3:81–8 provides for appeal to the Appellate Division of the Superior Court from determinations of state administrative agencies. The Superior Court consequently is vested with the prerogative powers exercised by the former Supreme Court, with the exception of the discretion formerly obtaining in that court to grant or deny the issuance of prerogative writs.

Certification of a matter to this court for decision, while the same is pending before the Appellate Division of the Superior Court is an innovation in New Jersey procedure pursuant to the Constitution of 1947. This court thereby assumes in their entirety the obligations of the Appellate Division.

*Art. VI, sec. II, par.* 2, *Constitution of* 1947, gives this court appellate jurisdiction in the last resort in all causes provided in the Constitution, and *Art. VI, sec. V, par.* 1, *clause* (*d*) provides for appeals on certification by this court to the Superior Court. When we exercise the right of certification to the Appellate Division of the Superior Court on our own motion prior to hearing there we are bound to review the matter so certified on all points properly presented to

that court for determination. Therefore we are called upon to decide this matter on its merits, if that review is possible on the findings and evidence in the record before us.

In determining our authority and duty on review as above outlined, we are guided in part by the legislative expression although our prerogative powers are not thereby confined. This legislative statement takes form in the following section of our statutes:

> *R. S.* 48:2–46. "Setting aside orders.
> The supreme court is hereby given jurisdiction to review any order of the board and to set aside such order in whole or in part when it clearly appears that there was no evidence before the board to support the same reasonably or that the same was without the jurisdiction of the board.
> No order shall be set aside in whole or in part for any irregularity or informality in the proceedings of the board unless the irregularity or informality tends to defeat or impair the substantial right or interest of the prosecutor in certiorari."

Although the Legislature has expressed that orders of the Board are not to be  set aside unless there was no evidence before the Board to support the same reasonably (*R. S.* 48:2–46, *supra*), it is established that if such legislative suggestion were a limitation upon a court constitutionally exercising the powers formerly exerted through the medium of prerogative writs, the statute would be repugnant to the Constitution. The statute now incorporated in *R. S.* 48:2–46 was enacted at a time when the former Supreme Court was in existence and exercised ancient inherent jurisdiction over prerogative writs. That court, in *Public Service Co. v. Public Utility Board,* 84 *N. J. L.* 463, 466 (*Sup. Ct.* 1913) said:

> "* * * We are given jurisdiction to set aside the order of the commissioners when it clearly appears that there was no evidence before the board to support reasonably such order or that the same was without the jurisdiction of the board. On its face this section confers jurisdiction upon this court, but a jurisdiction of a limited character, only to be exercised when it clearly appears that there is no evidence before the board to support their order, or where the order is without their jurisdiction. If this language is taken literally, we should be powerless in any case within the

jurisdiction of the board to set aside its order if there was any evidence to support it, no matter how overwhelming the evidence to the contrary might be. It is needless to say that such a literal construction of section 38 would bring it into conflict with our constitution. It needs no act of the legislature to confer on us the power to review the action of an inferior tribunal, and the legislature cannot limit us in the exercise of our ancient prerogative."

The above decision of the former Supreme Court was affirmed in *Public Service Gas Co. v. Board of Public Utility Com'rs.*, 87 *N. J. L.* 581, decision on reargument at *p.* 597 (*E. & A.* 1915), and on writ of error in the United States Supreme Court was dismissed on stipulation, 242 *U. S.* 666, 667, 61 *L. ed.* 552 (1917).

We proceed to an examination of the construction the courts have placed on the authority and duty so vested in us.

The Board stands between the carrier and the passengers to effect a just and reasonable status. This court said, in *Public Service Coordinated Transport v. State, supra* (at *pp.* 224-225):

"The chief power of this court in rate cases is to review the reasonableness of the rates fixed by the Board. We can say, however, that the rate which a public utility may reasonably charge should be sufficient to encourage good management and furnish a reward for efficiency, to enable the utility, under efficient and economical operation, to maintain and support its credit; and to enable it to raise money necessary for the proper discharge of its public duties. It can never be more than the reasonable worth of the service supplied; neither can it be fixed so low as to be confiscatory. If within these limits and supported by competent evidence, rates set by the Board would clearly be just and reasonable."

It is now firmly settled in our system of jurisprudence that there must be sufficient or substantial competent and relevant evidence to support the findings of fact and reasonableness of the rates established by the Board. *Public Service Coordinated Transport v. State, supra* (1950); *N. J. Bell Tel. Co. v. Communications Workers, etc.*, 5 *N. J.* 354, 375 (at *pp.* 378, 379). Compare *National Dairy Products Co. v. Milk Control Board*, 133 *N. J. L.* 491 (*Sup. Ct.* 1945)

(considering action taken by the State Milk Control Board) ; *Universal Camera Corp. v. N. L. R. B.,* 340 *U. S.* 474, 95 *L. ed.* —— (*U. S. Sup. Ct.* Feb. 26, 1951) (considering the history and construction of the Federal Administrative Procedure Act and the Taft-Hartley Act). Where the reasonableness of fixed rates is challenged and subjected to judicial review, the court is required to consider the evidence and resolve for itself the issue of reasonableness. See *Public Service Coordinated Transport v. State, supra,* at *p.* 215 and authorities there cited. In the *Public Service* case, we further said (*p.* 216) :

"The justness and reasonableness of a particular rate of fare can only be determined after an examination of a company's property valuation which constitutes its rate base; its expenses, including income taxes and an allowance for depreciation; and the rate of return developed by relating its income to the rate base."

We held that in the event any of the three factors mentioned is not reasonably supported by the proofs the rate of fare itself is unreasonable.

Furthermore, the prevailing rule is that findings of facts below are essential in rate cases and may not be supplied by implication. *N. J. Bell Tel. Co. v. Communications Workers, etc.* (*p.* 375), *supra; Colorado Wyoming Gas Co. v. Federal P. Com.,* 324 *U. S.* 626, 89 *L. ed.* 1235 (1945) ; *Wichita Railroad & L. Co. v. Public Utilities Com.,* 260 *U. S.* 48, 67 *L. ed.* 124, 130 (1922). See 43 *Am. Jur., Public Utilities and Services, sec.* 184, *p.* 695, *sec.* 221, *p.* 718; *Mt. Carmel Pub. Utility & Serv. Co. v. Public Utilities Commission,* 297 *Ill.* 303, 130 *N. E.* 693, 21 *A. L. R.* 571 (*Ill. Sup. Ct.* 1921). In the case of *N. J. Bell Tel. Co. v. Communications Workers, etc., supra,* we have recently been called upon to examine this phase of the problem and have said:

"The requirement of findings is far from a technicality and is a matter of substance. It has been said that it is a fundamental of fair play that an administrative judgment express a reasoned con-

clusion. *Federal C. C. v. Pottsville Broadcasting Co.*, 309 *U. S.* 134, 84 *L. ed.* 656 (1940). A conclusion requires evidence to support it and findings of appropriate definiteness to express it.

\* \* \*

The courts of this State have not been silent with respect to the necessity of specific findings and determination of facts by administrative agencies. See *Penna. R. R. Co. v. N. J. State Aviation Com.*, 2 *N. J.* 64 (1949); *Gianfrancisco v. Public Service, etc., Transport*, 11 *N. J. Misc.* 219 (*Sup. Ct.* 1933); *Rojeski v. Pennington Dairy Farms, Inc.*, 118 *N. J. L.* 335 (*Sup. Ct.* 1937); and *Hughes v. N. J. State Highway Dept.*, 129 *N. J. L.* 273 (*Sup. Ct.* 1942).

Clearly it is the function of the administrative authority and not the courts to find the facts. Findings must be free from ambiguity which raises a doubt as to whether the administrative authority proceeded upon a correct legal theory. The most reasonable and practical standard is to require that findings of fact be sufficiently specific under the circumstances of the particular case to enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon which the order is based afford a reasonable basis for such order. This is a necessary rule where, as here, the findings of fact are conclusive upon review, if supported by evidence. See 146 *A. L. R.* 209, *et seq.*" *N. J. Bell Tel. Co. v. Communications Workers, etc.*, 5 *N. J.* 354, 375, 376 (1950).

## THE MERITS OF THE CASE.

We now move to the application of the foregoing principles to the disposition of the appeal before us. The question is whether there is sufficient basis in the record, procedurally and factually to support the order of the Board under review.

We are called upon to determine the reasonableness of a rate established under our statute in the light of well established principles. The important question so raised is whether the three factors hereinabove referred to, necessary to the establishment of a reasonable rate, namely the company's property valuation which constitutes its rate base, its expenses, and the rate of return developed by relating its income to its rate base, are found by the Board and rested upon evidence to support the same reasonably. In this investigation of the record and determination of the reasonableness of the rate established, we must view the entire proceedings culminating in the Board's order of September

27, 1950. This necessarily includes consideration of the orders of March 15, 1949, and March 6, 1950. It is evident that the Board likewise considered itself bound to resort to the entire record, rather than solely the record made on rehearing, in rendering its decision of September 27, 1950.

In the decision of March 15, 1949, the Board recited numerous items of fact and conclusions incidental to the determination, but we fail to discover any finding of the three ultimate facts requisite for determination of a reasonable fare, viz., property value, expenses and rate of return developed by relating income to the rate base. All that may be deduced from that order is that the Railroads were losing money—the Board found that the existing rates (resulting from 1947 proceedings before the Board) were therefore unjust and unreasonable. The Board found that the Railroads had failed to carry the burden of proving the new rates proposed by them in June, 1948, to be reasonable and disapproved those prospective new rates. The Board's conclusion that other increased rates for lesser amounts would be reasonable is unsupported by any findings of fact. The burden of proof as to the justness and reasonableness of those rates likewise remained with the Railroads, since the rates of fare established by the Board constituted an increase over the rates in effect at the time the Railroads filed their schedules of proposed increases in June, 1948.

The decision of the Board of March 6, 1950, which set in motion the machinery of the rehearing, merely established that the Board deemed it necessary to re-examine the circumstance surrounding the Railroads' financial status and commutation operational results, facts existent in the period of operation of the fares resulting from the order of March 15, 1949. On September 27, 1950, the Board's final decision and order subject of this appeal was filed. This order, as was the case of the order of March 15, 1949, above discussed, failed to state any finding of fact as to rate base, which is the foundation stone of a rate determination. *Public Service Coordinated Transport v. State, supra* (at *p.* 217). Although

finding that the rates established pursuant to the order of March 15, 1949, "will be unjust and unreasonable for the future," there is no finding of fact concerning expenses nor one relating income to rate base. Hence there is no reasonable basis for the establishment of the rates decided upon by the Board in either the order of September 27, 1950, or the prior order of March 15, 1949. In the recent pronouncement of this court in the case of *N. J. Bell Tel. Co. v. Communications Workers, etc., supra* (at *p.* 376), it is stated:

"In one of the oft-quoted cases, *Florida v. United States*, 282 *U. S.* 194, 75 *L. ed.* 291 (1931), it was said that in the absence of basic or essential findings to support an order of the Interstate Commerce Commission, the evidence would not be examined in order to resolve opposing contention. That philosophy was followed in *Acheson, T. & S. F. R. Co. v. United States*, 295 *U. S.* 193, 79 *L. ed.* 1382 (1935) wherein the court said, at page 201 of the U. S. report:

'This court will not search the record to ascertain whether, by use of what there may be found, general and ambiguous statements in the report intended to serve as findings may by construction be given a meaning sufficiently definite and certain to constitute a valid basis for the order. In the absence of a finding of essential basic facts, the order cannot be sustained. *Florida v. United States*, 282 *U. S.* 194, 215, 75 *L. ed.* 291, 305, 51 *S. Ct.* 119. Recently this court has repelled the suggestion that lack of express finding by an administrative agency may be supplied by implication. *Panama Ref. Co. v. Ryan*, 293 *U. S.* 388, 433, *ante* 446, 465, 55 *S. Ct.* 241. See *Beaumont, S. L. & W. R. Co. v. United States*, 282 *U. S.* 74, 86, 75 *L. ed.* 221, 229, 51 *S. Ct.* 1; *Interstate Commerce Commission v. Chicago, B. & Q. R. Co.*, 186 *U. S.* 320, 341, 46 *L. ed.* 1182, 1193, 22 *S. Ct.* 824.' "

The Intervenors have pressed the argument in support of the order of September 27, 1950, that the rates established pursuant to the order of March 15, 1949, were discriminatory, that the Board in its order of September 27, 1950, so found, and that the evidence in the record supports this finding. Although the Board so found and the evidence in the record is indicative of the validity of its conclusion, this factor is not separable from the determination of reasonableness of rates made in the September 27, 1950, order and is insufficient of itself to support that order.

For complete disposition of this case an incidental question must be considered.

It seems that there exists a strong disagreement between the parties concerning the admissibility of the answers sought to certain 12 propositions propounded to the Railroads. The Board in its order of August 8, 1950, determined the questions to be relevant but failed to order the Railroads to reply thereto. The Railroads contend the data sought was relevant but not material and was foreign to the proper scope of the rehearing. It is apparent that the evidential information requested was relevant. The Board is not bound by the technical rules of evidence, R. S. 48:2–32, but were it so restricted the 12 items could have been clarified by proper response. They constitute requests for material data within the purview of R. S. 48:2–36.1 which provides, *inter alia*:

"The data which the board is hereby empowered to require to be compiled may relate and extend to services rendered, business done, transactions had, and property located, within or without this state where such data is material and relevant to the inquiry, investigation or proceeding so undertaken by, or pending before the board."

The Board should have ordered the Railroads to answer the questions.

## CONCLUSION

For the reasons above stated, we are compelled to and do hereby set aside the orders of the Board of March 15, 1949, and September 27, 1950. The record and proceedings are remanded to the Department of Public Utilities, Board of Public Utility Commissioners, State of New Jersey, for rehearing on the evidence upon which the orders of March 15, 1949, and September 27, 1950, were based, as well as upon such additional evidence if any as may be produced. R. S. 48:2–47.

We are authorized by the statute, R. S. 48:2–47, *supra,* where we deem it equitable and just to remand a rate case to

the Board for rehearing, to direct that such rehearing be had upon "such terms and conditions as are reasonable." Since the proceedings before the Board resulting in the orders of March 15, 1949, and September 27, 1950, hereby set aside, are entire, there is consequently no decision of reasonableness of the rate schedules filed by the appellant railroads in June, 1948; the statutory permission for suspension of the proposed tariffs has been exhausted but the statute fails to direct that in such event those proposed fares become effective. The result of our decision, in the absence of a specific direction to the contrary, would therefore be the establishment of the higher fares proposed by the Railroads in their schedules filed in June, 1948, pending the disposition of the rehearing. In the alternative, by virtue of our authority under *R. S.* 48:2–47, we could order a stay of those proposed higher fares, thus relegating the Railroads to the fares in existence prior to June, 1948. We are not disposed to adopt either of these alternatives. The broad authority of the statute may not be lightly exercised, but in the instant case we are faced with confusion of rates and inconvenience to the commuting public, as well as discrimination between commuters on the several carriers' lines in this State, if the full impact of our action is permitted to fall without an effort to ease its effect. Under these circumstances we direct that the rehearing be had upon the following terms and conditions: (1) The Board shall promptly institute a rehearing, on due notice, and shall complete the same and make its specific findings of facts and enter its order establishing just and reasonable rates within six months from the date of the filing of the mandate of this court; (2) the rates in effect as set forth in the Board's order of March 15, 1949, which have remained in effect since they became effective shortly thereafter by virtue of a stay of the effective date of the Board's order of September 27, 1950, ordered by the Appellate Division of the Superior Court on October 13, 1950, under *Rule* 3:81–12 upon the term that the appellants promptly reimburse any purchaser of an intrastate commuted fare ticket for the

excess fare he shall have paid the appellants as a result of such stay in the event of an ultimate adverse decision, shall continue in effect pending the rehearing, and (3) in the event the rates found to be reasonable and placed in effect as a result of the rehearing hereby ordered are less than those currently in effect under the aforesaid order of the Board of March 15, 1949, the appellants shall promptly reimburse any purchaser of an intrastate commuted fare ticket for the excess fare he shall have paid the appellants as a result of the stay heretofore ordered by the Appellate Division of the Superior Court and under the terms of this order, and (4) the appellants, by posting printed notices in their stations and by distributing printed notices to the purchasers of intrastate commuted fare tickets issued by the appellants, which became valid on and after October 15, 1950, shall advise such purchasers that such tickets will be subject to refund for the difference, if any, between the fares charged and the lower fares prescribed by the Board of Public Utility Commissioners of the State of New Jersey if the action of the Board in prescribing such lower fares is upheld, and that such refund will be made only upon the surrender of the contract portion of the ticket, which will not be taken up by the trainmen.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, BURLING and ACKERSON—4.

*For affirmance*—Justice WACHENFELD—1.