10 N.J. 255 (1952)
90 A.2d 1
IN THE MATTER OF THE TARIFFS FILED ON INCREASED LOCAL AND JOINT PASSENGER COMMUTATION FARES IN INTRASTATE TRAFFIC EFFECTIVE JULY 5, 1948  THE CENTRAL RAILROAD COMPANY OF NEW JERSEY AND THE NEW YORK & LONG BRANCH RAILROAD COMPANY.
THE CENTRAL RAILROAD COMPANY OF NEW JERSEY AND THE NEW YORK & LONG BRANCH RAILROAD COMPANY, EACH A CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, APPELLANTS,
v.
THE DEPARTMENT OF PUBLIC UTILITIES, BOARD OF PUBLIC UTILITY COMMISSIONERS, STATE OF NEW JERSEY, RESPONDENTS.
The Supreme Court of New Jersey.
Argued June 2, 1952.
Decided June 26, 1952.
*258 Mr. Judson C. McLester, Jr., of the New York Bar, argued the cause for the appellants (Mr. Charles D. Peet, of the New York Bar, on the brief; Mr. William F. Hanlon, attorney).
Mr. Joseph Harrison argued the cause for the respondent (Mr. Frank H. Sommer, Deputy Attorney-General, of counsel; Messrs. Edward S. Binkowski and John R. Sailer, Deputy Attorneys-General, on the brief; Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey, attorney).
The opinion of the court was delivered by BURLING, J.
The Central Railroad Company of New Jersey and the New York & Long Branch Railroad Company (hereinafter referred to as the Railroads), New Jersey corporations, appealed an order (filed December 20, 1951) of the Board of Public Utility Commissioners, Department of Public Utilities, State of New Jersey (hereinafter called the respondent) to the Superior Court, Appellate Division, under the provisions of Rule 3:81-8. Prior to hearing before that court certification of the controversy was allowed upon our own motion.
The order of the respondent from which the instant appeal stems relates to the intrastate commuted (passenger) fares of the Railroads, and constitutes a sequel to the decision of this court setting aside two orders of the respondent filed during earlier phases of these proceedings. See Central R. Co. of N.J. v. Dept. of Public Utilities, 7 N.J. 247 (1951). A brief outline of the entire proceedings is warranted on the present appeal in view of the course they have followed.
The Railroads participated in rate adjustment proceedings before the respondent in 1947 which culminated in the respondent's order effective early in 1948, resulting in an increase in intrastate commuted fares. This order was not appealed.
In June, 1948, the Railroads having become dissatisfied with the results of the existing intrastate commuted fares *259 filed schedules of new proposed increases therein with the respondent. A stay of the effective date of these filed schedules, and a hearing on the reasonableness thereof was ordered by the respondent. This was the inception of the proceedings under review, being Docket No. 4000 of the respondent. The stay so ordered was continued by consent pending the initial hearings and until the respondent filed its order of March 15, 1949. This order rejected the schedules as filed but allowed the Railroads an increase in their rates for intrastate commuted fare passengers. The resultant increased fares became effective March 27, 1949, and are those under which the Railroads are currently operating this category of service. On July 5, 1949, groups representing passengers of the railroads affected by the fare increase filed with the respondent a "Petition for Reconsideration." The intervenors' action in this respect stirred the respondent to an exercise of its statutory authority to order a rehearing. See Central R. Co. of N.J. v. Dept. of Public Utilities, supra (7 N.J., at pp. 250-252 and 254-255). The respondent, at the close of the rehearing so initiated, on September 27, 1950, entered an order reducing the intrastate commuted fares to a level recommended by an Interstate Commerce Commission examiner (but apparently not adopted by the Interstate Commerce Commission), but which level was higher than that of the rates in existence at the time of the inception of these proceedings in 1948.
The Railroads appealed the September 27, 1950, order of the respondent, arguing that there was no evidence reasonably to support the order, that it was without the jurisdiction of the respondent and violated the Railroads' constitutional rights. Our review of the proceedings disclosed that neither the March 15, 1949, order nor the September 27, 1950, order was valid. The March 15, 1949, order failed to include findings of fact on rate base, expenses, and rate of return (see 7 N.J., at p. 263) and the September 27, 1950, order was similarly deficient, this court, inter alia, expressly holding that the September 27, 1950, order contained "no finding *260 of fact concerning expenses" (see 7 N.J., at p. 264). This court set aside both of the foregoing orders and remanded the matter to the respondent for a rehearing on all the evidence adduced, including that evidence introduced at the initial hearings, the rehearing ordered by the respondent and the second rehearing resulting from the mandate of this court. It was carefully pointed out that the burden of proof remained with the Railroads until the ultimate determination of the matter (see 7 N.J., at pp. 255-257). The Railroads did not seek a rehearing on any of the issues involved.
Pending the appellate review above recited the rate level of the Railroads' intrastate commuted fares was maintained under a stay granted by the Superior Court, Appellate Division, at the scale resulting from the March 15, 1949, order of the respondent. The stay was in effect continued by the mandate of this court pending rehearing on remand.
On December 20, 1951, the respondent, after a rehearing of these rate proceedings, ordered pursuant to the mandate of this court, denied the increase in intrastate commuted fares sought by the Railroads for the reason that the Railroads had not shown the same to be just and reasonable and ordered the Railroads to revert to the rates existing in 1948 when these proceedings had their genesis. The Railroads appealed from this order to the Superior Court, Appellate Division, and applied for a stay of execution thereof. This court, prior to hearing of the appeal and of the motion for stay before the Appellate Division allowed certification on our own motion. At the same time we granted a stay of the effect of the respondent's December 20, 1951, order, the net result being the maintenance of the level of rates effected pursuant to the March 15, 1949, order of the respondent pending the present review.
Before proceeding to a discussion of the questions involved in this appeal it is observed that the respondent in the December 20, 1951, order made no findings as to the quantum of the Railroads' rate bases and of a fair rate of return. Under the circumstances of the case now apparent this was *261 not erroneous. The Railroads at the rehearing subsequent to the remand by this court agreed that the rehearing was of the entire proceedings, the original case (Docket No. 4000), but when asked to present proofs as to rate base and rate of return, stated for the record: "We do not propose to present any such proof because the intrastate commutation service, just as all other commutation service, is rendered at a loss. Since it is a losing service, there cannot possibly be any return whatsoever and therefore we deem a rate base to be wholly immaterial."
As for the expense-income factor, the Railroads appear to have relied solely on the evidence introduced at the remanded rehearing, for they stated to the respondent at that time: "before we close our case, we will put in evidence upon which we are content to stand as a matter of law, showing that our intrastate commutation business is conducted at a loss, and on that basis we deem a rate base immaterial." However, the respondent, as required by the mandate of this court, made its findings upon the evidence upon which the orders of March 15, 1949, and September 27, 1950, were based as well as upon the additional evidence which was produced in the remanded rehearing. The respondent found that the Railroads had failed to present any proof or evidence as to property valuations which constitute their rate bases, and had failed to present any proof or evidence as to a rate of return developed by relating their income to their rate bases. These findings are not questioned by the Railroads on this appeal and the reason therefor is obvious.
The foregoing recital leads directly to the principal questions involved in this appeal. These are whether a public utility which has filed tariffs increasing fares, in a hearing to determine the justness and reasonableness of the increase, is required to submit evidence as to rate base, and whether the evidence presented by the Railroads in these proceedings was sufficient legally to compel the respondent to approve the scale of intrastate commuted fares proposed by the Railroads in their tariffs filed June 4, 1948. Incidental questions *262 involved are whether the respondent's order of December 20, 1951, may be sustained on the ground that the Railroads failed to answer certain questions interposed by the intervenors at the proceedings resulting in the abortive September 27, 1950, order (see 7 N.J., at p. 265); whether the respondent properly concluded that the Railroads were required to submit evidence beyond and in addition to its books of account to establish the reasonableness of such accounts; and whether the respondent properly concluded that in determining the reasonableness of commutation fares which allegedly show a loss it should consider and compare the overall intrastate operations, on which the Railroads failed to submit proof. Analysis of both the principal and incidental questions involved and the applicable principles of law directs the conclusion that the decision and order of the respondent filed December 20, 1951, should be affirmed.
The substantial question involved in this case is whether the Railroads may be required to establish a rate base to support their assertion of reasonableness of the rates proposed by them in June, 1948. Their contention is that no utility may be required to maintain any portion of its service at a loss and if it is proved that the specific service is operated at a loss then it is not incumbent upon them to prove the fair value of the property used and useful in that service. This in effect is an assertion that an exception exists to the principles of law established in the application of our statute relating to the fixing of rates. The substance of these principles, pertinent to this question, is that the utility must prove its property valuation which constitutes its rate base, its expenses, and the rate of return developed by relating its net operating income to its rate base in proving the justness and reasonableness of its proposed increased rates. Public Service Coordinated Transport v. State, 5 N.J. 196, 216 (1950); Central R. Co. of N.J. v. Dept. of Public Utilities, supra (7 N.J., at p. 261). The circumstances of this case show that the valuation of the Railroads' property was in itself a paramount factor, for it is upon that *263 factor that the variable of the allowance for annual depreciation, an operating expense of considerable importance in this case, depends. In determining reasonableness of rates for supplying a public service, there may be included in the operating expenses, as was attempted in the present proceedings, an allowance for consumption of capital, namely annual depreciation, in order to maintain the integrity of the investment in the service rendered. However, the annual allowances for depreciation are customarily credited to a depreciation reserve account and charged to operating expenses, and represent at a given time the amount of the investment which has been made out of the utility's rates for the ostensible purpose of replacing capital consumed. In determination of the question whether the annual allowance for depreciation charged to operating expenses is justified, there must be proof of the value of the property depreciated and as well proof of the depreciation reserve accumulated. Under the operating loss theory confiscation is the issue and the utility "has the burden of making a convincing showing that the amounts it has charged to operating expenses for depreciation have not been excessive." Lindheimer v. Illinois Bell Telephone Co., 292 U.S. 151, 166-175, 54 S.Ct. 658, 78 L.Ed. 1182, 1192-1196 (1934). Thus, although in some instances the "losing operation" theory may be tenable and may obviate in a clear case the necessity for proof of the utility's rate base, such is not the situation exhibited here.
The respondent contends that even assuming that the intrastate commutation service of the Railroads is operated at a loss, i.e., that after sufficient evidence is introduced to show convincingly that the service does not produce sufficient revenue to meet the cost of operation, it does not follow that the State is precluded from requiring the continued operation of that service at a loss. It has been held that the problems in a legislative determination cannot be resolved alone by reference to the Railroads' loss in the operation of a specific unit of their service, but depend more upon the predominantly local factor of public necessity for the specific unit of service. *264 Alabama Pub. Serv. Com. v. Southern R. Co., 341 U.S. 341, 347, 71 S.Ct. 762, 95 L.Ed. 1002, 1007-1008 (1951). In the latter case the United States Supreme Court cited with approval Chesapeake & Ohio R. Co. v. Public Service Com., 242 U.S. 603, 608, 37 S.Ct. 234, 236, 61 L.Ed. 520, 523 (1917) wherein the same court held:
"That there will be such a loss is, of course, a circumstance to be considered in passing upon the reasonableness of the order, but it is not the only one. The nature and extent of the carrier's business, its productiveness, the character of service required, the public need for it, and its effect upon the service already being rendered, are also to be considered."
Compare Penna-Reading S.S. Lines v. Bd. of Pub. Utility Com'rs., 5 N.J. 114, 121, 125, 128 (1950).
The Railroads seek to avoid the application of the foregoing principles, as so recently expressed in the Alabama Public Service case, supra, by reliance upon expression of the United States Supreme Court in other decisions. In Banton v. Belt Line R. Corp., 268 U.S. 413, 45 S.Ct. 534, 69 L.Ed. 1020 (1925), where an order of the New York Public Service Commission establishing joint routes on street railways in New York City, and a maximum joint fare of five cents, was involved, the United States Supreme Court held that the utility's fair share of the joint rate would be substantially less than the operating expenses and taxes justly chargeable to that portion of its business. In Northern Pac. R. Co. v. Dept. of Public Works, 268 U.S. 39, 45 S.Ct. 412, 69 L.Ed. 836 (1925) it was held that if existing rates were confiscatory there could be no reason for awaiting the test of much lower rates prescribed by the public service commission. The rates there prescribed applied to intrastate transportation of saw logs, reducing prior existing rates thereon 15 to 37 per cent. The rationale of the decision was that the department erred in basing its finding on evidence which clearly did not support it. In Vandalia Railroad Co. v. Schnull, 255 U.S. 113, 41 S.Ct. 324, 65 L.Ed. 539 (1921), *265 however, the specific holding was that the state has no power to select a particular commodity or class of traffic for carriage at less than cost or for nominal compensation. This was the rule pronounced in Northern Pac. R. Co. v. North Dakota, 236 U.S. 585, 35 S.Ct. 429, 59 L.Ed. 735 (1915), where the United States Supreme Court had before it maximum intrastate rates for the transportation of one commodity, coal, in carload lots, which rates were fixed by a state statute. It was applied to intrastate passenger fares in Norfolk & W.R. Co. v. Conley, 236 U.S. 605, 35 S.Ct. 437, 59 L.Ed. 745 (1915). In the latter case there was an admission by the state's expert witness that the actual cost of passenger carriage was two cents a mile, and it appears from the reported opinion that the rate fixed by the legislative authority was two cents a mile. The United States Supreme Court held that it was not necessary under such circumstances to prove the value of the property employed in the intrastate business, but it does not appear that the "actual cost" of supplying the service included an annual depreciation charge.
Analysis of all the decisions of the United States Supreme Court hereinabove adverted to indicates that where the state action under review involves a specific operation, such as the running of a certain transportation unit or the carriage of passengers over a particular portion of the railroad's lines, the consideration of public need for the service may be paramount to the operating loss and save the order from invalidation on constitutional grounds, but where entire services are concerned, such as intrastate passenger service, although different categories of service may be required to be supplied at lower rates of return than others, no category of service may constitutionally be required to be maintained at a loss. The rationale of the latter theory is that excessive charges may not be placed on one class of service in order to provide a return on the carrier's entire service, where another class of service is maintained at a loss. Norfolk and W.R. Co. v. Conley, supra, 236 U.S., at page 609, 35 S.Ct. 437, 59 L.Ed. at page 748. However, this is in essence a confiscation *266 theory and the operating deficit must be convincingly proved.
The respondent in the present case determined that the Railroads had failed to carry the burden of proof imposed upon them to show the reasonableness of the increase in intrastate commuted passenger fares proposed by them in the schedules filed in June, 1948. The Railroads assert that this was error.
We have discussed rate base and its relationship to the annual depreciation item of operating expense. There are also included in the evidence several items charged to maintenance and to interest on investment. The legality of these items as operating expenses is not questioned by the respondent but it found that the only evidence before it of the Railroads' passenger revenues and expenses were book figures shown in annual reports and exhibits submitted by the Railroads. This finding is clearly supported by the record. It is contested by the Railroads on the ground that their books of account are the only available source of proof in this respect. This argument has no merit. There must be proof in the record not only of the amount of the various accounts but also sufficient evidence from which the reasonableness of the accounts may be determined. Public Service Coordinated Transport v. State, supra (5 N.J., at pp. 218-219). On the depreciation factor, above adverted to, the burden of proof of the utility is not sustained by proof that its general accounting system has been correct for the mathematical calculations are based on underlying predictions which are matters of opinion and require examination of many variable elements, in which opportunities for excessive allowances even under correct accounting systems are always present. Lindheimer v. Illinois Bell Telephone Co., supra, 292 U.S. 151, 54 S.Ct. 658, 78 L.Ed., at pages 1194-1197.
Another phase of the evidence meriting individual comment is the treatment of apportionment of operating expenses resulting in the allocations to intrastate commuted fare passenger traffic contained in the Railroads' exhibits. During *267 the initial phase of the remanded rehearing the Railroads' witness, Mr. Frederickson, admitted that "at the present time there is nothing before this Board by which they can deduce the intrastate commutation costs. * * *" The Railroads' counsel argued that the respondent would be "justified in looking at the overall loss from the commutation business" and stated "we will put in evidence upon which we are content to stand as a matter of law, showing that our intrastate commutation business is conducted at a loss. * * *" The respondent's counsel argued that it should have before it "sufficient evidence as to revenue and expenses related to the intrastate New Jersey commutation service, sufficient for the Board to determine whether or not that service is or is not being rendered at a loss." The Railroads argue to this court in their brief that the respondent and its counsel apparently approved the bases upon which allocations were made. The record refutes this assertion and indicates that the respondent made known to the Railroads its intention to weigh all the evidence introduced without objection from the Railroads. The Railroads made no study of overall intrastate operations stating "in order to secure a purely intrastate operation study it would be necessary for us to go through thousands and thousands of way bills to ascertain the intrastate portion of our revenue and then make a complete study of our expenses and separate them in some manner so as to secure those which are applicable solely to intrastate." This indicates the deficiency of supporting evidence as to allocation of expenses between passenger and freight traffic for it shows that the allocations made were general estimates without supporting evidence. The Railroads also failed to show the expense of operation of Reading and B. & O. trains using Central Railroad's tracks and operated by it  the commutation income was included but not the expense. What effect this proof if introduced would have had upon the mathematical formulae used by the Railroads' witnesses in allocating expenses to intrastate commutation service is left to conjecture. On an issue involving constitutional validity of state action general *268 estimates of the sort here submitted should not be accepted as adequate proof to sustain a finding of confiscation but should be supported by adequate data. Simpson v. Shepard, 230 U.S. 352, 465-466, 33 S.Ct. 729, 57 L.Ed. 1511, 1568 (1913).
A considerable proportion of the Railroads' exhibits were prepared upon the hypothesis of complete abandonment of commutation service. The Railroads thus attempted to justify allocation of various items of expense solely to commutation service, assuming that their regular fare passengers (and their freight service) now using the facilities which this hypothesis assumed would be unnecessary therefor, would be otherwise accommodated. The cost of providing one class of service is not properly determined by the hypothetical elimination of that service. Compare Banton v. Belt Line R. Corp., supra (268 U.S. 413, 45 S.Ct. 534, 69 L.Ed., at page 1026); Railroad Commission of Cal. v. Pacific G. & E. Co., 302 U.S. 388, 398, 58 S.Ct. 334, 82 L.Ed. 319, 325 (1938); In re New Jersey Power & Light Company, 9 N.J. 498 (1952).
It further appears that a substantial portion of the exhibits relating to expenses introduced in evidence were prepared by using book cost figures of 1947 and applying various dollar translators, to show estimated costs for 1948-1951. The Railroads introduced evidence of asserted estimated adjustments to show savings from various changes in operation subsequent to 1947, but introduced no evidence to support their estimates, such as proof of comparability of maintenance and operational items of 1947 with those of 1948-1951, nor of the actuality of their estimates of the savings effected by reduction of service and of use of facilities. Compare In re New Jersey Power & Light Company, supra; West v. Chesapeake & P. Telephone Co., 295 U.S. 662, 667, 672, 55 S.Ct. 894, 79 L.Ed. 1640, 1647 (1935).
We are of the opinion that the respondent properly determined that the Railroads failed to carry their statutory burden of proving that the rate changes proposed by them in *269 their filed schedules of June, 1948, were just and reasonable. This renders it unnecessary to decide whether the respondent correctly held that the Railroads failed to answer sufficiently the 12 interrogatories addressed to them by the intervenors during the 1950 proceedings.
For the reasons above stated the order of the Board of Public Utility Commissioners, Department of Public Utilities, State of New Jersey, filed December 20, 1951, is affirmed.
For affirmance  Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN  6.
For reversal  Justice WACHENFELD  1.